JAMES McMAHON, Respondent, v. THE SUPREME COUNCIL, ORDER OF CHOSEN FRIENDS, Appellant.

St. Louis Court of Appeals, June 10, 1893.

1. **Benefit Association**: DUTY OF CLAIMANT TO EXHAUST REMEDIES WITHIN THE ORDER. The laws of a benefit association provided that claims for relief should be passed upon by designated officers, and that their denial of a claim should be conclusive, unless reversed by the Supreme Council of the organization on appeal thereto by the claimant. *Held*, that it was the duty of a claimant to first exhaust his remedy by such appeal before resorting to the courts for the enforcement of his claim.

2. ———: ———: WAIVER BY ASSOCIATION OF ITS RIGHTS. But the association loses its right to require such appeal, if the Supreme Council on the motion of one of its members reviews the ruling of these officers and affirms their rejection of the claim.

McMahon v. The Supreme Council.

3. ———: PERMANENT DISABILITY. Such an association undertook to furnish relief to any member who was "totally and permanently disabled from following his or her usual occupation." *Held*, that under the various provisions of its laws the total disability provided for was one which prevented the member from following an occupation whereby he could obtain a livelihood, and that, in determining whether such a disability exists in a given case, both the mental and the physical capabilities of the member should be considered.

4. ———: ———. The fact that a member could enable himself to pursue an occupation by wearing an appliance (in this case a truss) will not lessen the character of the disability as a total one, when the use of the appliance would endanger his life or would subject him to intolerable discomfort.

5. ———: MEMBER IN GOOD STANDING. *Held*, that a limitation of the right to relief in cases of such disability to members in good standing required only that they should be in good standing when disabled.

6. ———: EVIDENCE: COMPETENCY OF REPORT OF MEDICAL EXAMINER. The laws of the association provided for the examination of the applicant for relief by a physician appointed by the association and for the physician's report in regard to the character and permanency of the disability. *Held*, that such report was not competent evidence against the applicant in a suit by him for the recovery of the relief.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

L. A. *Steber*, for appellant.

W. C. and J. C. *Jones*, for respondent.

BIGGS, J.—The plaintiff holds a benefit certificate in the defendant order for $1,000. In addition to the insurance afforded its members the defendant undertakes, in consideration of the assessment and dues paid, to grant relief to its aged members, and also to those who have from accident or disease become disabled from following any occupation, provided such members have complied with the rules and regulations of the order.

Article 2, section 4, of the relief fund law reads: "Should a member become totally and permanently disabled from following his or her usual or other occupation by reason of disease or accident, such member upon the receipt and approval of satisfactory proofs as hereinafter provided for shall be entitled to a benefit of not exceeding one half the amount of the relief fund certificate held by him or her."

The plaintiff alleges in his petition that on the nineteenth day of January, 1889, by reason of disease and accident he became totally and permanently disabled from following his occupation or any other; that at the time the disability arose he was a member in good standing of defendant order, and that the defendant after receipt of notice and proof of such disability refused to pay his claim.

The answer admitted the issuance of the certificate, but denied that the plaintiff had complied with the requirements regulating the adjustment of disability claims; denied that the plaintiff was a member of the defendant order at the time of the *institution of the suit;* and denied that plaintiff was permanently and totally disabled.

There was a verdict and judgment for the plaintiff for $507.60, from which the defendant has prosecuted this appeal.

Section 6 of the relief fund law reads: "On receipt of the proper notice of disease or accidental disability under section 4 of this article, the supreme councilor shall proceed to investigate the same. If at any time he deems the fact to warrant it, he may appoint one or more physicians, whose duty it shall be to make a careful examination of the member's condition and report as to the character and permanency of the disability. If such report shows a disability of an unquestionably total and permanent disabling charac-

ter, the supreme councilor, supreme recorder and supreme medical examiner may approve the same and order the benefit paid. If, however, in the opinion of said officers there is any doubt concerning the permanence of the disability, they shall postpone the matter for any period they may determine upon, not exceeding one year, and shall then order a new examination either by the same or other physicians. If the results of this second examination be also uncertain, said officers may in like manner provide for a third, upon the result of which they shall either pay or refuse to pay the benefit claimed. This decision shall be final and conclusive upon the parties affected thereby, unless reversed upon appeal by the supreme council in regular session. Any claimant feeling aggrieved may take such an appeal by serving notice thereof upon the supreme recorder within thirty days after receipt of notice of decision by the claimant or his or her legal representatives. The supreme council shall accord the appellant a hearing at its next regular session and dispose of the matter."

Acting under this section the supreme councilor, the supreme recorder and the supreme medical examiner of the defendant appointed Drs. F. J. Lutz and R. J. Stoffel to make an examination of the plaintiff's condition. Upon the report of these physicians the supreme officers decided adversely to the claim. The plaintiff having failed to appeal to the supreme council as required, it was urged on the trial and is insisted now that such appeal is a condition precedent to the right to maintain the action.

It is clear from the reading of the by-laws that a member before resorting to the courts for aid in the enforcement of his claim must exhaust the remedies provided in the contract, that is, appeal from the decision of the supreme officers in vacation to the supreme

council in session, or show some cause for failing to do so. We deem this requirement just and reasonable and beneficial alike to the order and to the individual member. By this mode of procedure the supreme council is afforded an opportunity to look into the merits or equities of each rejected claim, and to settle or compromise without cost to itself or the member. *Supreme Council of Order of Chosen Friends v. Forsinger,* 125 Ind. 52. But it is in evidence that the ruling as to the plaintiff's claim was reviewed by the supreme council on motion of one of its members, and that the action of the supreme officers in rejecting the claim was affirmed. This was clearly a waiver by the defendant of the right to require an appeal.

The instruction, that under the law and the evidence the plaintiff could not recover, was properly overruled. The words of the contract are: "Totally and permanently disabled from following his or her usual or other occupation." What is meant by "total and permanent disability" is explained by the latter clause of section 11 of the relief fund law, which reads: "Such a permanent and disabling sickness as shall render the member helpless to the extent of permanently preventing the member from following any occupation whereby he or she *can obtain a livelihood.*" This makes it very clear that what is and what is not a "total disability" within the meaning of the contract is a relative question, depending upon the attainments of the person disabled. A physical ailment which would render an illiterate laboring man totally unfit to earn a livelihood might not prevent a lawyer from practicing his profession, or take away from him all other chances of earning a living in some other avocation. Therefore, in determining the liability in such a case, the courts must consider both the mental and the physical capabilities of the assured, otherwise such a

benefit certificate would be a delusion and a snare. *Walcott v. U. L. & Ac. Ass'n*, 28 N. Y. St. 481; *Sawyer v. U. S. Cas. Co.*, 8 Am. Law Reg. (N. S.) 233; Bacon on Benefit Societies, sec. 395 a.

The plaintiff's evidence tended to prove that in the fall of 1889 he became disabled as the result of hernia; that he was operated on three times without securing any relief; that his occupation was that of a day laborer—engaged in digging cellars; that the rupture was of such a character as to unfit him for performing manual labor, and that he had been unable during the four years preceding the trial to earn a livelihood. His physical condition was well established by the testimony of three reputable physicians, all of whom concurred in the opinion that the plaintiff was permanently incapacitated to perform such labor as required lifting or unusual exertion. They were also of opinion that this rupture was so large that a truss could not be worn without great danger of serious injury, and that, even though the hernia could be reduced and held in place by a truss, the plaintiff could not perform labor which required much exertion. This evidence tended to prove that the plaintiff was totally and permanently incapacitated to follow his usual avocation, for the use of a pick, spade or shovel, certainly requires unusual exertion.

In determining whether the plaintiff was disabled to such an extent as to prevent him from pursuing some *other* avocation in which he could earn a livelihood, his former occupation, his education and business experience, his natural abilities, and his age must be considered. The plaintiff's evidence bearing on this branch of the case tended to show that the plaintiff was fifty-eight years old; that he was enfeebled and weakened by sickness to such an extent that he could walk only a few blocks at a time; that he could neither

read nor write; that he was naturally weak minded, and exceedingly ignorant, all of which had a tendency to prove that he was incapable of earning a livelihood in any of the pursuits suggested by the defendant. We, therefore, conclude that the court committed no error in submitting the case to the jury.

There was evidence that the plaintiff had failed to pay his dues and assessments after the presentation of his claim. The defendant asked the court to instruct the jury that, to entitle the plaintiff to recover, it must appear that he was a member in good standing *at the time the suit was instituted*. The court struck out the words italicized, and inserted in lieu thereof *"at the time of making his claim on defendant."* This left the instruction more favorable to the defendant than the law warranted. If the plaintiff was a member in good standing at the time he became disabled he is entitled to recover.

The defendant asked the court to instruct as follows:

"5. Even though from the evidence the jury may believe that the plaintiff, at the time of making his claim upon defendant, was or is now by reason of hernia totally and permanently disabled from pursuing any occupation for a livelihood, yet, if they further believe and find that the hernia was then or is now reducible with a truss (without serious injury or inconvenience to the plaintiff), and that a suitable truss worn by him would enable him to pursue an occupation for a livelihood, and he nevertheless refused and refuses to wear one; then and in that event the jury must find a verdict for the defendant." The court added the clause in parenthesis of which the defendant complained. There was evidence tending to prove that the hernia was so large that to wear a truss would endanger the plaintiff's life. The plaintiff testified

McMahon v. The Supreme Council.

that the truss which he attempted to wear hurt him so much that he could not wear it. This proof warranted the modification of the instruction. The plaintiff ought not to be required to endanger his life, or render his existence intolerable, in order to save to the defen - ant order a few hundred dollars.

The admission of the testimony of Dr. Dalton touching the physical condition of the plaintiff at the date of the trial was competent and relevant. The evidence bore on the question of the permanency of the plaintiff's disability, and directly tended to corroborate the testimony of the physicians who made the original examinations.

There was no error in excluding the written report of Dr. Lutz in reference to the physical condition of the plaintiff at the time he made the examination. The only legitimate object or purpose of such an examination was to furnish information to the defendant to control its action in admitting or rejecting the claim in the first instance, and not to produce independent and competent proof of the plaintiff's condition in legal proceedings. Especially was the action of the court justifiable, since it appears that Dr. Lutz was present in court ready to testify, and that he did testify, as to the result of his examination.

The other errors assigned we do not deem it necessary to discuss, as they would not affect the result. Judgment affirmed. Judge BOND concurs. Judge ROMBAUER is absent.