State ex rel. v. Grand Lodge A. O. U. W.

STATE OF MISSOURI *ex rel.* JOSEPH SCHREMPP, Respondent, v. THE GRAND LODGE OF MISSOURI ANCIENT ORDER UNITED WORKMEN *et al.*, Appellants.

St. Louis Court of Appeals, April 20, 1897.

1. Benefit Societies: AUTHORITY OF GRAND MASTER TO INTERPRET LAWS OF ORDER: JURISDICTION. Where a ruling, by the grand master of a fraternal beneficial order, made under a delegation of authority from the Grand Lodge of the order, to pass upon all matters of law referred to him by the subordinate lodges, subject to its approval, was approved by the Grand Lodge, he had jurisdiction to make the ruling, and its approval by the Grand Lodge established a precedent for the guidance of the subordinate lodges.

2. ———: RIGHT OF MEMBER TO RESORT TO CIVIL COURTS FOR REMEDY FOR GRIEVANCE AGAINST. A member having a grievance against such order is not required to exhaust all of his remedies in the judicatories of the order before he can resort to the civil courts for a remedy, when to do so would be a vain and useless step.

3. ———: EXPULSION OF MEMBER: MANDAMUS TO COMPEL RESTORATION: ESTOPPEL. In a proceeding by *mandamus* against the Grand Lodge of such order to restore to membership one claiming to have been illegally expelled therefrom, where the expulsion was for a violation of a law of the order, and no authority was given to a grand officer or the subordinate lodges to waive an enforcement of its laws, absolution from the penalty of the violated law could not be invoked upon the doctrine of estoppel, on the ground that the subordinate lodge collected assessments from relator after full knowledge of such violation.

4. ———: AGREEMENT OF MEMBER TO COMPLY WITH LAWS OF ORDER: ESTOPPEL. Where a member of such order, in his application for membership, agreed to comply with all laws and regulations of the order then in force and which might thereafter be enacted, he was amenable to a restriction subsequently imposed upon its members, and estopped to complain thereof.

*Appeal from the St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

REVERSED, AND PROCEEDING DISMISSED.

*F. H. Bacon* and *Lee & McKeighan* for appellants.

The action is based upon the contract of membership, and not on the certificate. *Masonic Ben. Ass'n v. Bunch*, 109 Mo. 560; 19 S. W. Rep. 25; *Keener v. Grand Lodge*, 38 Mo. App. 543; *Lysaght v. Stone Mason, etc.*, 55 *Id.* 538. See, also, *Wist v. Grand Lodge*, 22 Ore. 271; 29 Pac. Rep. 610.

The contract between relator and the order is found in the application taken in connection with the laws of the order. *Smith v. Knights, etc.*, 36 Mo. App. 184-190; *Hogins v. Supreme Lodge, etc.*, 76 Cal. 109; *Royal Templars v. Curd*, 111 Ill. 284-286; *Holland v. Sup. Council, etc.*, 54 N. J. L. 490; 25 Atl. Rep. 367; *Britton v. Sup. Council, etc.*, 46 N. J. E. 102, 18 Atl. Rep. 675; *Hutchinson v. Sup. Tent. etc.*, 22 N. Y. Sup. 801; *Lorcher v. Sup. Lodge*, 72 Mich.; 40 N. W. Rep. 545.

Under the contract between relator and the order, the laws of the order could be changed and altered in any reasonable manner. *Supreme Lodge v. Knights*, 117 Ind. 489; *Stoher v. San Francisco, etc., Soc.*, 82 Cal. 557; 22 Pac. Rep. 1125; *Sup. Council v. Ainsworth*, 71 Ala. 436; *Sup. Lodge v. La Malta*, 31 S. W. Rep. (Tenn.) 493; *Daughtry v. Sup. Lodge*, 20 S. Rep. (La.) 712; *Hobbs v. Ben. Ass'n*, 42 N. W. Rep. (Iowa) 107; *Courtney v. Ass'n*, 53 *Id.* 238; *West v. Grand Lodge*, 37 S. W. Rep. (Tex.) 966; *Gooch v. Ass'n*, 109 Mass. 558; *Grosvenor v. Society*, 118 *Id.* 78; *Chamberlain v. Lincoln*, 129 *Id.* 70; *Karcher v. Sup. Lodge*, 137 *Id.* 368; *Hellenberg v. Independent Order*, 94 N. Y. 580; *Sabin v. Phinney*, 31 N. E. Rep. (N. Y.) 1087; *Bogard v. Farmers, etc., Soc.*, 79 Mich. 440; *Pope v. Bldg. Ass'n*, 3 Rep. (Ch.) 47; *Fugure v. Soc. St. Joseph*, 46 Vt. 362-369; *Poultney v. Bachman*, 31 Hun, 49; *St. Patrick, etc., Soc. v. McVey*, 92 Pa. St.

The knowledge of the Germania Lodge can not be imputed to the Grand Lodge, nor is the latter estopped from insisting upon the forfeiture. *Borgraefe v. Knights*, 22 Mo. App. 142; *Harvey v. Grand Lodge*, 50 Mo. App. 472–477; *Miller v. Hillsborough F. Ass'n*, 42 N. J. L. 459–460; *Froehly v. Ins. Co.*, 32 Mo. App. 312–322; *Lyon v. Sup. Assembly*, 26 N. E. Rep. (Mass.) 236; *Swett v. Soc., etc.*, 7 Atl. Rep. (Me.) 541; *Levell v. Royal Arcanum*, 30 N. Y. Sup. 205; *Robertson v. Metropolitan, etc., Co.*, 88 N. Y. 541; *R. R. v. R. R.*, 82 Mo. 402; *Galbraith v. Newton*, 39 Mo. App. 381; *Ins. Co. v. Amerman*, 119 Ill. 329; *Blodgett v. Perry*, 97 Mo. 263; *Davidson v. Young*, 38 Ill. 152; *Audreveno v. Mut. Reserve Ass'n*, 38 Fed. Rep. 806; *Pruester v. Sup. Council*, 32 N. E. Rep. (N. Y.) 135.

The provisions of the law in this case were self-executing. *Ellerbe v. Faust*, 119 Mo. 653; *Smith v. Knights*, 36 Mo. App. 184; *Hogins v. Sup. Council*, 76 Cal. 109; *Royal Templars v. Curd*, 111 Ill. 284–286; *Rood v. Ass'n*, 31 Fed. Rep. 62. See, also, *Sperry's Appeal*, 9 Atl. Rep. (Pa.) 479; *Burton v. St. George, etc., Soc.*, 28 Mich. 261; *Commonwealth v. Pem. Ben. Soc.*, 2 Serg. & R. 254; *Durel v. Perseverance Co.*, 17 S. Rep. (La.) 591.

Germania Lodge having jurisdiction, and relator appearing and pleading guilty, the judgment of the lodge can not be collaterally attacked, nor have the civil courts jurisdiction to review the proceedings. *Mulroy v. Knights of H.*, 28 Mo. App. 463–470; 1 Thomp. Corp. 856; *Commonwealth v. St. Patricks, etc.*, 2 Binn. (Pa.) 448; *Hoefner v. Grand Lodge*, 41 Mo. App. 45; *Croak v. High Court*, 162 Ill. 298; *Robinson v. Templars Lodge*, 97 Cal. 62; 1 Thomp. Corp., sec. 106; Bacon on Ben. Soc., sec. 106; Nibl. on Ben. Soc., secs. 45, 46, 52; *Commonwealth v. Pike Ben. Soc.*, 8 Watts & S. 247; *Osceola Tribe v. Schmitt*, 57 Md. 98;

*Sperry's App.*, 116 Pa. St. 391; *Anacosta Tribe v. Murbach*, 13 Md. 91; *Karcher v. Sup. Lodge*, 137 Mass. 368; *Lafond v. Deems*, 81 N. Y. 514; *Woolsey v. Independent Order*, 61 Iowa, 191, 192.

*Lubke & Muench* for respondent.

The benefit certificate with existing laws of the order, formed the contract between relator and appellant, which could not be impaired without consent of the member. Facts stated in the application or promises made therein were mere "promissory representations," and in no wise affected his right to membership. *Grand Lodge v. Sater*, 44 Mo. App. 445.

When the laws of the order do not provide that any person engaged in the saloon business should *ipso facto* forfeit his membership, such result will not follow, not even where the membership was acquired after the adoption of the prohibitory provision. *Zepp v. Grand Lodge*, 68 Mo. App. 487.

The courts will no more lean towards forfeitures in these cases, than in those involving property rights only, and will not infer an intention to forfeit membership where no such intention is clearly expressed. Bacon, Ben. Soc., secs. 104, 107; *Mulroy v. Sup. Lodge*, 28 Mo. App. 463.

The relator's plea of estoppel is abundantly sustained. Whatever may be the rule as to officers of a distinct subordinate body not having power to bind officers of the supreme body, it is settled that officers of the supreme body have such power to estop. Bac. Ben. Soc., sec. 431; *Ins. Co. v. Eggleston*, 96 U. S. 572; *Borgraefe v. Sup. Lodge*, 26 Mo. App. 225; *Harvey v. Grand Lodge*, 50 *Id.* 476, 479; *Chadwick v. Order of T. A.*, 56 *Id.* at 471, 472.

The point made that relator should have first pros-

ecuted an appeal is not well taken. The sole question here is, did any law exist by which relator could be expelled. If so, then he forfeited his membership *eo ipso*. If not, then the action of the grand master and of the lodge was without jurisdiction, and void. In neither case was there anything to be gained by an appeal. Bacon on Ben. Soc., sec. 442, and citations.

BLAND, P. J.—The appellant is a benevolent organization and corporation, composed of a large number of subordinate lodges in the state of Missouri, of which Germania Lodge No. 2 of St. Louis is one. One of the objects of the organization is to provide benevolent insurance for the families of its members, and the subordinate lodges are permitted also to provide sick benefits for their members. On January 20, 1879, respondent made the following application to the appellant:

"ST. LOUIS, January 20, 1879.
"*To the Grand Lodge of Mo., A. O. U. W.:*

"I, Joseph Schrempp, having made application for the M. W. degree in Germania Lodge No. 2, Ancient Order·of United Workmen, state of Missouri, do hereby agree that compliance on my part with all the laws, regulations and requirements which are or may be hereafter enacted by said order is the express condition upon which I am to be entitled to participate in the beneficiary fund, and have and enjoy all the other benefits and privileges of said order.

"I certify that the answers made by me to the questions propounded by the medical examiner of this lodge, which are attached to this application and form a part thereof, are true.

"I further agree that the certificate to be issued hereon, shall have no binding force whatever until I shall have taken the M. W. degree of said order and

until countersigned by the master workman and recorder of said Germania Lodge No. 2.

"I hereby authorize and direct that the amount to which I may be entitled of said beneficiary fund, shall at my death be paid to Julia Schrempp.

"JOSEPH SCHREMPP, Applicant.

"[Seal of Grand Lodge.]

"FREDERICK KRAGE,

"Recorder of Germania Lodge No. 2, A. O. U. W."

Afterward he was admitted to membership and received certificate number 3744, in the usual form of the order, and by the terms of which the Grand Lodge promised to pay to Julia Schrempp the full sum of $2,000 on the death of the said Joseph, upon the express condition that said Joseph Schrempp should in every particular, while a member of said order, comply with all the laws, rules and requirements thereof. Respondent continued his membership in Germania Lodge No. 2, paying all of his dues and assessments to the thirtieth day of September, 1895, when he was expelled from the order, and his benefit certificate canceled. It appears from the evidence that this action was taken by Germania Lodge by direction of the grand master workman, the chief executive officer of the order. The charge made against the respondent was that he was a saloon keeper and bartender. Upon the trial he confessed the charge (that he was both a saloon keeper and bartender), but denied the right of the lodge to expel him for these reasons. It is admitted that at the time respondent became a member of the order and received his benefit certificate, no by-law rule or regulation of the order existed prohibiting a saloon keeper or bartender from becoming a member of the order, nor any prohibiting a member from engaging in either of these occupations. Respondent began the business of saloon keeper in 1891,

and continued in it and was so engaged at the time of his explusion. By the by-laws of the order every applicant for membership was required to undergo a medical examination, procure a certificate of that examination, and file it with his application for membership. In 1880 the Grand Lodge inserted in this certificate a provision prohibiting a saloon keeper from becoming a member of the order. The following is a part of the report made by grand master workman, Rogers, to the Grand Lodge in 1882, in the case of M. T. Davenport of Brunswick Lodge No. 178.

"In August last I received a communication from the recorder of Brunswick Lodge No. 178, stating that a member of that lodge, Brother M. T. Davenport, had gone into the business of a saloon keeper after he had become a member of the lodge, and asking how that would affect his rights in the beneficiary department of the order. To this letter I replied as follows:

" 'St. Louis, August 31, 1881.

" '*Jasper Zimmerman, Esq.*

" 'Dear Sir and Brother:—In answer to the question submitted by your lodge, "Can a member who is in good standing, and who has been a member for some time, go into the saloon business without forfeiting his right as a member of the order," I shall set forth briefly the reasons for the adoption of the law excluding saloon keepers, bartenders, etc., from membership in the order in this state, and draw my conclusions from them, as a basis for my decision.

" 'Up to and including the year 1879, we had been suffering a heavy mortality amongst saloon keepers in the city of St. Louis; and, at the session of the Grand Lodge held in January, 1880, the report of the grand recorder and the committee of medical examiners for St. Louis, developed the startling fact, that out of twenty-nine deaths during the year, ten, or

thirty-four and one half per cent, were saloon keepers; and the further fact that seventy per cent of the deaths from consumption during that year came from the same class. The statistics from other jurisdictions (notably, Ohio and Kentucky) showed a similar state of facts. With such a record staring it in the face, the Grand Lodge could no longer defer the duty of excluding this class demonstrated to be "extra-hazardous risks," from becoming members of the order.'

"Accordingly, a new form of medical examination was adopted, containing more stringent rules for the government of the examiner, one of which (rule 3, clause D.) excludes saloon keepers, bartenders and inebriates from membership in the order.

"And now we come to the question at issue; how does the law affect such as may go into the business, after having become members of the order? Recognizing the principle that no retroactive or *ex post facto* law could be passed, it was not intended to disturb any who were at that time members of the order, and engaged in this occupation; but it did mean, if it meant anything, that, from that time forward, there should be no increase in the number of those who were engaged in this extra hazardous calling, in the membership of the order. While the law does not, in terms, prohibit members from going into this business, it was clearly the intent to prevent any further increase in this class of risks; hence I hold that any member of the order in this jurisdiction who engages in the business of saloon keeper or bartender, does so in violation of this law; and it is the duty of any lodge, having a member so offending, to proceed against him at once, and suspend him from all benefits and privileges in the order.

"There is a question under this law which has not been presented to me before; and while the position I

assume goes beyond the letter of the law, it seems to me to be the only legitimate conclusion to arrive at, and as such, must stand as the law in this jurisdiction, unless reversed by the Grand Lodge.

"Fraternally yours, in C. H. & P.

"H. L. ROGERS, G. M. W."

At the first session of the Grand Lodge held thereafter, a report of the *Davenport* case was made by the grand master workman. This report was referred to a committee raised by the Grand Lodge. The committee recommended that the report be not approved, and reported for adoption a new by-law, intended to cover the evil complained of, which read as follows:

"Section 1. No person who is now or who may hereafter become a member of this order in this grand jurisdiction shall engage in the business of keeping a saloon or dramshop or tending bar, providing always that nothing herein contained shall be so construed as to affect or abridge the rights and privileges of members of the order who may have engaged in said business prior to April 1, 1882."

The Grand Lodge rejected the proposed by-law, and approved and adopted the report of grand master workman Rogers. Thereafter this ruling of the grand master workman Rogers was recognized as a law of the order, by being included under one head or another of the laws, rules and regulations of the order, published from time to time by authority of the Grand Lodge, and in its latest publication made in 1894, is numbered law 70, and is made to read as follows: "No person shall be admitted to membership in the order who is engaged in the sale by retail of intoxicating liquors as a beverage." Among the powers delegated to the grand master workman during the recess of the Grand Lodge is the following: "During the recess of the

*AUTHORITY of grand master to interpret laws of order: jurisdiction.*

Grand Lodge it shall be the duty of the grand master workman to interpret the laws and otherwise render decisions on all matters of law referred to him by subordinate lodges or members of the order in this grand jurisdiction and such decisions and interpretations shall have binding force, subject, however, to the approval of the Grand Lodge at its next session." Under this delegation of judicial authority he had jurisdiction to make the ruling he did make in the *Davenport* case, and the approval of the ruling by the Grand Lodge established a precedent for the guidance of subordinate lodges.

One of appellant's contentions is, that respondent should have exhausted all of his remedies in the judicatories of the order, to wit, by appeal to the grand master workman, then to the Grand Lodge, and finally to the Supreme Grand Lodge. Ordinarily the civil courts, in cases like this, will not hear a grievance of this character, until after the action of the order or society complained of has been ratified by the highest tribunal of the order, established to adjudicate such cases, but the rule is not an ironclad one, and the civil courts will not require that complainant shall have done an unreasonable or useless act, before he can be heard. Here the complainant was expelled by the express order of the grand master workman. The Grand Lodge has prejudged his case by its approval of the ruling in the *Davenport* case. An appeal to either of these, grand master workman or the Grand Lodge, would have been a useless ceremony. When and where the Supreme Lodge would meet does not appear from the record. In such circumstances it appears to us to be unreasonable to rule that the respondent should have taken appeals to all these judicatories before he could

VOL. 70 app—30

be heard to complain to the civil courts of his country. *McMahon v. Supreme Council*, 54 Mo. App. 472. The doctrine of estoppel is invoked by the respondent upon the ground, that, after knowledge of his business, the Grand officers of the order continued to assess him on account of death losses to the date of his expulsion, which assessments he paid as well as his regular lodge dues. This is not a contest between the holder of a certificate or policy of insurance and the Grand Lodge, but a *mandamus* to restore to membership one who claims he was wrongfully and illegally expelled from the order. The expulsion was for violation of an alleged by-law of the order, which justified the expulsion. The laws of the order are equally binding upon all its members. No authority is given a Grand officer or subordinate lodge to waive the enforcement of the by-laws against a refractory member, and we are unacquainted with any rule of law whereby absolution from the penalties of violated law can be invoked upon the doctrine of estoppel. This brings us to a consideration of the merits of the case, to wit: Did there exist any law, rule or regulation of the order justifying the expulsion of the respondent from his membership? The ruling in the *Davenport* case and its approval and adoption by the Grand Lodge and the subsequent recognition of the rule by the Grand Lodge, can be taken in no other light, or be reconciled upon any other hypothesis, than the adoption of the ruling as a law of the order. This conduct and these acts of the Grand Lodge are irrefragable proof of the adoption of the law, which it might do as well by acts and conduct as by a formal and express adoption of the by-law. Angell & Ames on Corp., sec. 328; *Lockwood v. Mechanics' Bank*, 9 R. I. 836. This law having been adopted, the second question is, was the defendant, he

*Marginal note:* EXPULSION of member: mandamus to compel restoration: estoppel.

having become a member of the order and received his beneficiary certificate prior to to its adoption, amenable to it. The right to amend its by-laws is necessarily inherent in a corporation of this kind, and its members might reasonably expect that they would be amended. *Ellerbe v. Faust*, 119 Mo. 653; *Schrick v. St. Louis Mut. House Building Co.*, 34 Mo. 423; *Allen v. Life Association of America*, 8 Mo. App. 52. The respondent made the following agreement with the order, when he made application for membership: That compliance on his part with all the laws, regulations and requirements, "which are or may be hereafter enacted by said order, is the express condition upon which I am to be entitled to participate in the beneficiary fund and have and enjoy all the other benefits and privileges of said order." He agreed in advance that changes in the by-laws might be made, and unless this change is an unreasonable one, the respondent's right to membership and to participate in the benefits of the order thereafter were dependent upon his observance of the new by-law. The law was in full force when he went into the saloon business; he is conclusively presumed to have known of its existence at the time. The restriction it imposed upon its members was for the benefit of the order and for the protection of its members. The business was found by grand master workman Rogers to be extra-hazardous to life. This finding was duly approved by the Grand Lodge. The by-law, in view of this fact, was reasonably legal, and eminently just to members of the order not engaged in that business. The respondent, as we have seen, agreed in his application for membership that such a law might be made, and he ought not now to be heard to complain of it. The judgment is reversed and proceeding ordered to be dismissed. It is so ordered. All concur.

*Margin note: AGREEMENT of member to comply with laws of order: estoppel.*