EMINENT HOUSEHOLD OF COLUMBIA WOODMEN *v.* RAMSEY.

[79 South. 351, Division A.]

1. INSURANCE. *Mutual benefit insurance. Plea as to use of drugs. Demurrer.*
   Where in a suit by a beneficiary against a benefit society, on one of its policies, the plea of the society stated that the beneficiary took chloral hydrate or a narcotic as a medicine, but did not charge that he had the drug habit, which under the constitution and by-laws was cause for suspension, or denial of reinstatement. In such case the demurrer of the beneficiary to the plea was properly sustained.

2. MUTUAL BENEFIT INSURANCE. *Prematurity of suit. Exhaustion of Remedies.*
   Where a beneficiary made due proof of death to a benefit society, and opportunity was given it to settle, this was all the society was entitled to, and suit was not prematurely brought because the beneficiary had not exhausted all the remedies provided by the laws of the order, any provisions in the laws of the society providing for more than this would be contrary to public policy and an attempt to deprive the courts of their jurisdiction.

3. EVIDENCE. *Preliminary proof showing admissibility. Necessity.*
   The evidence of the doctors who treated a deceased member of a benefit society, was properly excluded, when the application of the beneficiary for insurance, which expressly waived the privi-

lege of objection to such testimony, had not been introduced or referred to, nor was it stated by counsel that this testimony would be made competent by the introduction of the waiver in said application. And this is true although at a later period in the trial the application was introduced in testimony, but the defendant did not thereafter offer to introduce the physicians.

4. Mutual Benefit Insurance. *Representation or warranty.*
   If a member of a benefit society in his application for reinstatement warranted that he was in sound health, when he had epilepsy, his beneficiary cannot recover but if he merely represented that he was sound in health believing in good faith that he was not affected with epilepsy, the beneficiary can recover.

5. Mutual Benefit Insurance. *Construction of contract.*
   Since the contract of insurance issued by a beneficiary society is drafted by the society, it will be construed as a whole against the society and in favor of the insured.

6. Mutual Benefit Insurance. *Representations not warranties.*
   Where a certificate of insurance provided that it should not be contested except for misrepresentations in the application or health statements, answers to questions as to health in applications for insurance, and for reinstatement, by a member warranting and declaring that, to the best of his knowledge, he was in sound health, were representations and not warranties.

Appeal from the circuit court of Copiah county.

Hon. D. M. Miller, Judge.

Suit by Mrs. J. W. Ramsey against the Eminent Household of Columbian Woodmen. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*G. L. Teat* and *J. A. Teat,* for appellant.

*W. Calvin Wells* and *M. S. McNeil,* for appellee.

Sykes, J., delivered the opinion of the court.

The appellee, Mrs. J. W. Ramsey, plaintiff in the circuit court, instituted suit against appellant for re-

covery of three thousand dollars upon a life insurance policy insuring the life of her husband, J. W. Ramsey, in which policy she was the beneficiary, and from a verdict and judgment in favor of Mrs. Ramsey this appeal is prosecuted.

The material facts necessary to an understanding of this opinion are as follows: .

In the year 1910 Dr. Ramsey, a practicing physician of Crystal Springs, made written application to the appellant insurance company for a policy of life insurance for three thousand dollars. In this written application appear the following stipulations:

"I certify and warrant that I am in sound bodily and mental health, that I am temperate and have no habit, injury, nor disease that will tend to impair my health or shorten my life.

"I have read the above answers, and declare and warrant them to be true, full, and complete, and agree that they shall be the basis of any covenant that may be issued to me. I waive for myself and beneficiaries the privilege of any and all laws tending to disqualify any physician from testifying to information obtained in professional capacity."

During the year of 1916 Dr. Ramsey became delinquent in the payment of his monthly dues or premiums on this policy, and it was necessary that he make a written application for reinstatement. In this application for reinstatement appear the following averments:

"As a condition of same being accepted and my covenant again being put in force, I hereby warrant and declare: . . .

"(3) To what extent do you use narcotics and spirituous liquors?

"(3) Ans. Not any. . . .

"I further warrant and declare that I am to the best of my knowledge and belief in sound health and free from any and all symptoms of disease, and that there

is now no condition of my person, residence, or occupation tending to impair my health, injure my constitution, or shorten my life; all of which statements I admit to be material, and warrant to be full and true as a basis of such reinstatement.

"I agree that this application for reinstatement if accepted shall become and form a part of my original application and covenant. . . ."

Dr. Ramsey was duly reinstated, and a new insurance policy issued to him by appellant company. This policy contains these material statements:

"In consideration of the application for membership and the agreements, statements, and warranties therein contained, the medical examination, and the constitution and by-laws, as they now exist or may be legally amended, all of which are expressly made a part of the agreement effected by this covenant, the Eminent Household of Columbian Woodmen has issued this covenant to Worthy Guest John Womack Ramsey. . . ."

Under the heading "Special Benefits and Conditions" is this statement:

"(10) This covenant shall not be contested except for misrepresentation in the application or in health statement, provided this guest has complied with the conditions of the constitution and of this covenant."

From the above quotations from the application and covenant it will be seen that these applications, constitution, and by-laws of the order are all made a part of the contract of insurance. The application for reinstatement is also according to its written provisions made a part of the original application.

In the constitution and laws of the appellant company, on page 21, paragraph 10, it is provided that a member may be expelled "for intemperance, use of narcotics," or "for making false representations in his application" for insurance; on page 38, section 12, under the heading "noncontestable":

"No covenant issued shall be contested except for misrepresentation in the application, or in health statements, provided all conditions of the covenant and the constitution and laws of the order shall have been faithfully complied with."

On page 41, under the heading, "Forfeiture," it is provided:

That "the covenant of insurance shall be void and of no effect" whenever a guest becomes "intemperate in the use of liquor, or uses opiates, cocaine, chloral, or other narcotics or poison, to such an extent as to impair his health, . . . or if representations in the application upon the faith of which the covenant was issued shall be found untrue."

On page 45, under the heading "Reinstatement," in paragraph 1, it is provided that any suspended guest for nonpayment of dues who is in good health and not addicted to the excessive use of intoxicants or narcotics may be restored to membership.

Paragraph 2, page 46, provides for the payment of his dues, and that he shall deliver to the worthy secretary a written statement and warranty certified by the secretary that he is in good health and not addicted to excessive use of intoxicants or narcotics, as a condition precedent to reinstatement.

The defendant in the lower court filed a special plea stating that under certain paragraphs of the constitution referred to in this opinion the insured had been suspended, and in his application for reinstatement, in reply to the question, "To what extent do you use narcotics and spirituous liquors?" he answered, "Not any," "well knowing at the time said answer to be untrue and misleading, and that he, the said J. W. Ramsey, did use narcotics, to wit, chloral, and had so used said narcotic from time to time prior thereto as a remedy for epilepsy," that this was a false warranty in the application for reinstatement, and that the insurance contract for

this reason is void. A demurrer was interposed and by the court sustained to this plea.

Another special plea was filed by defendant alleging that under the provisions of the by-laws and constitution of the order (which provision is as follows):

"No guest of this society and no beneficiary under any covenant issued thereby shall resort to the courts or institute legal proceedings of any kind for the assertion or adjudication of any rights claimed, either as guest or beneficiary, until the matter in controversy shall have been first submitted to the order for decision."

This section 2 provides, briefly, that a beneficiary shall submit her claim to the order, and if it is declined she has a right to appeal from that decision to the executive committee, and from their decision to the eminent council, and from their decision to the Eminent Household. It is only after a decision of the Eminent Household that she has a right to bring legal proceedings under this section. Her replication was filed to this plea in which it was denied that the plaintiff did not have a right to bring this suit before exhausting all of her remedies by appeal in the order as above set out.

The testimony in the case showed that the insured, Dr. J. W. Ramsey, previous to and at the time of the application for reinstatement, at irregular times, suffered from spells of unconsciousness, or fainting spells, varying in length from a few seconds to a few minutes. Sometimes he would have these spells with an interval of several days apart, and again several months would elapse between them. On some occasions, while standing on the street, he would fall down and have to be carried to his office. At other times these spells were very light, and it is doubtful whether or not he lost consciousness. He would recover within a few minutes and apparently be all right. One or two physicians testified in the case that they had seen him in one or two of these spells, and that it was a mild form of epilepsy, termed by one of them "petit mal."

The testimony shows that Dr. Ramsey was a very active practitioner of medicine up to the time of his fatal illness. A druggist, in the back of whose store Dr. Ramsey had his office, who had seen him in several of these spells, testified that Dr. Ramsey spoke of them as being a slight nervous affection. This druggist also testified that he had seen Dr. Ramsey take a tablespoonful of a mixture of chloral hydrate after one of these spells, and was told by the doctor that he took this mixture for these spells. As above stated, these spells were at very irregular intervals and of very short duration, and the testimony shows that they in no way incapacitated Dr. Ramsey from the active practice of his profession as physician. Four or five days before his death he was found on a sofa in his office in a profound sleep or coma from which he never regained consciousness.

After his death the beneficiary presented her proofs of loss to the order. Among these proofs was a statement of Dr. Jones, who testified in the case. This statement was introduced in evidence. In it the immediate cause of the death is said to have been coma. In answer to a question as to what all of the material facts relating to the sickness and death were, Dr. Jones answered as follows:

"He is said to have taken chloral hydrate. The supposition is that he took an overdose at this time."

Dr. Jones and all other physicians who attended Dr. Ramsey during his last illness were not permitted to testify what in their opinion was the cause of his death. After this testimony had been excluded by the court, the original application for insurance was introduced in evidence.

The first alleged error by the appellant in this court is that the demurrer should not have been sustained to the second special plea, in which it is alleged that Dr. Ramsey used narcotics, to wit, chloral, and had

used this narcotic from time to time as a remedy for epilepsy. It is contended that Dr. Ramsey's answer to this question is a warranty, and not a representation. From an examination of the constitution and by-laws of this order it will be seen that a member would be suspended, or would not be reinstated, who was addicted to the excessive use of narcotics—in other words, had formed a habit of using a narcotic. The question and answer in the application for reinstatement did not comply with the constitution and laws of the order, in that it did not ask whether or not he was addicted to the excessive use of a narcotic, or, in other words, whether or not he had the drug habit. This is the sum and substance of what the constitution and laws of the order meant. That plea states that he took choral hydrate or a narcotic merely as a medicine. It does not charge that he had the drug habit. For this reason the demurrer was properly sustained. 1 Bacon on Life and Accident Insurance, section 285; *Insurance Co.* v. *Cato,* 113 Miss. 298, 74 So. 114.

The court instructed the jury that the suit was not prematurely brought; in other words, that the beneficiary did not have to exhaust all of her remedies by appeal in the order as provided by the laws of the order. Due proofs of the death of the insured were made to the appellant company, and an opportunity was given it to comply with the terms of the policy and settle with the beneficiary. This is all that the appellant company is entitled to. By doing this demand was made upon the company to settle under the terms of the policy, and its conduct was a refusal to do so. Any provisions in the laws of the company providing for more than this would be contrary to public policy and an attempt to deprive the courts of their jurisdiction.

Practically the same question was presented and decided by this court in the case of *Independent Order of the Sons & Daughters of Jacob of America* v. *Aaron W. Wilkes,* 98 Miss. 179, 53 So. 403, 52 L. R. A. (N. S.) 817. In that case Wilkes sued the order for damages before exausting his remedies by appeal as provided by the laws of the order. The court decided it was not necessary for him to exhaust his rights within the order. In that case the court said:.

"The courts will take hold of and protect personal and property rights in whatever way it may be sought to disregard them."

See, also, *Kelly, Adm'x* v. *Trimont Lodge,* 154 N. C. 97, 69 S. E. 764, 52 L. R. A. (N. S.) 823, with note thereto.

Appellant contends that the testimony of the doctors who treated the deceased during his last illness should have been admitted, because the application for insurance expressly waives the privilege which would otherwise render this testimony incompetent. At the time the testimony of these physicians was offered by the defendant in the court below, the application had not been offered in testimony. Neither was it stated by counsel that this testimony would be made competent by the introduction of this waiver. The court therefore ruled correctly, and excluded this testimony. At a later period in the trial the application was introducted in testimony, but the defendant did not offer to reintroduce these physicians. A peremptory instruction was refused the defendant.

On behalf of the plaintiff the court instructed the jury that, even if they believed from the evidence that the deceased at the time he signed the certificate of reinstatement was afflicted with the disease of epilepsy, yet if they believed from the evidence that to the best of his knowledge and belief he believed he was in sound health and not afflicted with epilepsy,

they should return a verdict for the plaintiff. It is contended by the appellee that, under the terms and conditions of the insurance policy, the constitution and laws of the order, and the questions and answers in the applications, these answers are representations. Appellant contends, on the other hand, that the answers are warranties. If the answers are warranties, then the appellant would have been entitled to a peremptory instruction. On the other hand, if they are representations, the question should have been submitted to the jury, and the instruction given for plaintiff was correct.

We have quoted in detail from the applications, the laws of the order, and the policy. It is to be noted that in the application and in the application for reinstatement these answers are in some places referred to as warranties. In the application for reinstatement the deceased ''warranted and declared that to the best of his knowledge and belief he was in sound health.'' A warranty must be literally true, and it makes no difference whether or not it is believed to be true by the declarant; while a representation must only be believed to be true by the declarant.

The statement above quoted that ''to the best of his knowledge and belief he is in sound health'' seems to refer to a representation instead of a warranty; while the first part of the statement says he warrants and declares these facts.

We find in the laws of the order certain statements referring to misrepresentations of the insured and the penalty therefor. The important factor, however, in the case is item 10 of the policy, which expressly provides that:

''This covenant shall not be contested except for misrepresentations in the application or health statements, provided this guest has complied with the conditions of the constitution and this convenant.''

It is to be borne in mind that the constitution, application, and policy or convenant were all drafted by the appellant company; that men well understanding the difference between warranties and representations prepared these documents. If they had intended that the policy could be contested for false warranties, they would have said so. Instead of that, the policy provides that it shall not be contested except for misrepresentations.

Construing all of these documents as a whole against the insurer and in favor of the insured, we hold that the answers to the questions in the application for insurance and in the application for reinstatement are representations, and not warranties, and that the case was properly submitted to the jury. *Insurance Co.* v. *Swords,* 109 Miss. 635, 68 So. 920; *Insurance Co.* v. *Elmore,* 111 Miss. 137, 71 So. 305; 1 Bacon Life and Accident Insurance, section 288.

*Affirmed.*