HARRISON L. ROBERSON, RESPONDENT, v. BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN, APPELLANT.—114 S. W. (2d) 136.

Kansas City Court of Appeals.  November 15, 1937.

*Harold C. Heiss, Edward E. Naber* and *Samuel M. Carmean* for appellant.

*C. B. Burns* for respondent.

*P. E. Reeder* and *Charles J. Winger, Amici Curiae.*

SPERRY, C. J.—Harrison L. Roberson, plaintiff below, sued Brotherhood of Locomotive Firemen and Enginemen, defendant below, on an alleged contract of disability benefit insurance. Plaintiff

prevailed and defendant appealed. The parties will be referred to as plaintiff and defendant in this court.

The parties waived a jury and at the conclusion of the hearing of evidence each party requested the court to state in writing conclusions of fact separately from conclusions of law, as may be required in such cases under the provisions of Section 952, Revised Statutes of Missouri, 1929. The court refused to make certain conclusions of fact and of law which were submitted and requested by defendant. To this refusal defendant saved exceptions; and it also excepted to the findings of fact and conclusions of law as declared by the court. These matters were urged as grounds for a new trial and are urged here as error. We will examine the record with a view to determine whether or not the conclusions of fact and of law, as declared by the court, are substantially supported. [Steele v. Johnson, 96 Mo. App. 147, 1. c. 156; Loewen v. Forsee, 137 Mo. 29.]

The pleadings and the evidence disclosed that defendant is a voluntary, unincorporated labor union, with a Grand Lodge, many subordinate lodges, and with thousands of members in the United States and foreign countries; that it has a representative form of government with a constitution and by laws and practices secret ritualistic lodge work; that its membership is confined exclusively to one class of persons who are engaged in a single hazardous occupation, to-wit, persons employed as locomotive firemen and enginemen; and that it carries on an insurance business, without profit, for the exclusive benefit of its members.

The evidence further discloses that plaintiff while employed as a locomotive engineer, became a member of defendant in 1914; that defendant issued him a certificate or policy in its relief department and also in its pension department, prior to 1928; that in 1928 he was in good standing in the order and the above certificates to be in full force when he became totally disabled for the performance of *any work on a locomotive engine;* and that he was, sometime thereafter, taken out of employment by the railroad company he then worked for. He was granted a pension by defendant under the provisions of its "pension" department. Defendant, in 1931, at a regular convention of the Grand Lodge, amended its constitution and by laws and abolished its "Relief" and "Pension" departments, for the reason that both departments were financially insolvent. By appropriate action it established a "Disability Benefit Department," under the provisions of which its members who were then adjudged to be permanently and "totally" disabled and who were then receiving benefits from the pension department, upon releasing defendant from all claims on account of any rights such members had on account of the "pension" department, would be permitted to become members of the "Disability Benefit Department." Plaintiff

was advised of all of these facts by letter sent to him by defendant, dated August 26, 1931; and on December 11, 1931, he was advised that he was adjudged to be totally and permanently disabled as provided in the law governing the "Disability Benefit Department," and that, in exchange for his release of the "Pension" department and the payment of $1.25 per month assessments thereafter, he would be immediately transferred to the "Disability Benefit Department" and would immediately receive benefits therefrom at the rate of $50 per month. Plaintiff signed such a written release, in which instrument it was stated that it was for the purpose and in consideration of his being given benefits under the "Disability Benefit Department." He received $50 per month thereafter until February 1, 1934, when defendant notified him that a physical examination, which it had caused to be made of him in its routine check up on November 18, 1933, had shown that he was not "totally and permanently disabled as defined in the laws" of defendant applicable to disability benefits. Dr. Brennan testified for defendant that he made the aforesaid physical examination and stated in evidence the result thereof, and his findings and recommendations based thereon, which were to the effect that plaintiff was not, on said date, totally and permanently disabled from performing or directing any work but that he could do light work.

There was evidence on behalf of plaintiff to the effect that he had been continuously, since 1928 until the date of trial, and then was, wholly unable to perform any work; that he suffered from two inguinal hernias, low blood pressure, bad heart action, anemia, nervousness, and excessive and uncontrollable shaking; that he could not build fires, tie his shoes, or sit down or arise quickly without becoming dizzy; and that he could not endure even moderately cold weather. He was uneducated. He was at the time of trial, about sixty-two years of age, and was a member of the city council of Brookfield. His sole earnings since 1928 had been his salary as councilman, which was $100 per year. This was sufficient evidence upon which to base a finding of continuous, total and permanent disability within the meaning of the constitution and by laws of defendant which required one claiming under the "Disability Benefit Department" to be "totally and permanently disabled from engaging in any occupation, profession or business or from performing or directing any work for remuneration or profit." [McMahon v. The Supreme Council, 54 Mo. App. 468, l. c. 473; Young v. Metropolitan Life Insurance Company, 54 S. W. 1065, l. c. 1069; Kane v. Metropolitan Life Insurance Company, 73 S. W. (2d) 826; Heald v. Aetna Life Insurance Company of Hartford, Conn. (Mo.), 104 S. W. (2d) 379, l. c. 383; Buis v. Prudential Insurance Company of America, 77 S. W. (2d) 127, l. c. 131.] In this connection it will

be noted that under the "pension" department plaintiff was entitled to receive benefits if he became totally and permanently disabled so as not to be able to perform any work *on a locomotive engine,* whereas, under the provisions of the disability department he must be so permanently and totally disabled as to be prevented thereby "from engaging in *any* occupation, profession, or business or from *preforming or directing any work* for *remuneration or profit.* . . ." (Italics ours.) Considering plaintiff's lack of education and the nature and continuity of his disability, from 1928 until 1934, and his condition at the time of trial, we think our ruling in Buis v. Prudential Insurance Company, *supra,* peculiarly applicable here.

Defendant, however, contends that the original claim for pension filed by plaintiff recited his disability as resulting from pernicious anemia, whereas the evidence at the trial did not show him to be then suffering from such a disease, and, they say, if he once had pernicious anemia he would always have it because it is incurable. From this premise it is reasoned that the application for pension stated a false ground therefor. We hold that the medical evidence offered by plaintiff formed a sufficient basis for a finding that he suffered from a malignancy, described as pernicious anemia by one of the witnesses. Furthermore, defendant's own letter to plaintiff, dated December 11, 1931, stated the "report of medical examination in your case shows you *are* totally and permanently disabled, as provided in the law governing the Disability Benefit Department." (Italics ours). Defendant could only permit plaintiff to become a member of the last mentioned department in the event that he *then was* totally and permanently disabled; and it did not *then* matter from what cause the disability originally arose. It is bound by its letter, and is estopped to deny that plaintiff was, on December 11, 1931, disabled as required; and the cause of his disability was at that time immaterial. The overwhelming evidence showed that no change for the better in plaintiff's condition from that time until date of trial.

Defendant was and is doing a fraternal beneficiary insurance business in Missouri and its contracts of insurance will be governed by the law applicable to such contracts. [Bennett v. Brotherhood of Locomotive Firemen and Enginemen, 106 S. W. (2d) 25, l. c. 26; Clark v. Grand Lodge, 43 S. W. (2d) l. c. 409; Elliot v. Grand Lodge, Brotherhood of Ry. Trainmen, 95 S. W. (2d) 829, l. c. 833.] Under the provisions of Section 6021, R. S. 1929, defendant is exempt from *all of* the provisions of Article 13, Chapter 37, R. S. Mo. 1929, which governs fraternal beneficiary companies. Therefore no part of same applies to the case at bar. [Elliot v. Grand Lodge Brotherhood of Ry. Trainmen, 95 S. W. (2d) 829, l. c. 833.] Since defendant is a fraternal beneficiary insurance company and the contract sued on is one of that character, it follows that

the policy, the application, and the constitution and by laws of defendant must all be considered together as forming the contract of insurance. [Claudy v. Royal League, 168 S. W. 593.]

It is apparent, from the conclusions of fact and of laws as declared by the trial court, as well as from the court's refusal to find and make other conclusions of law and of fact as requested so to do by defendant, that the court determined the case on the theory that the contract sued on is governed by the law relative to "old line" insurance contracts. This was an erroneous theory. But if the judgment below was for the right party, even though it was arrived at on a wrong or different theory of the law from that upon which it must rest, yet it should be affirmed on appeal. [Aloe v. Fidelity Mutual Life Assn., 164 Mo. 675, l. c. 700, 55 S. W. 993; Wilhelm v. Security Benefit Assn., 104 S. W. (2d) 1042, l. c. 1046.]

But defendant contends that plaintiff is bound by positive declarations in his pleadings and that same irrevocably commit him to an entirely different theory than that upon which he recovered and that he disclaims therein that he claims under the "Disability Benefit Department." Of course plaintiff must recover because of his claim account of the "Disability Benefit Department" if he recovers at all, because he is conclusively bound by his written and signed application for membership therein, and his renunciation, in the same instrument, of all rights he might have under the "pension" department. The provisions of the "pension" department were pleaded in his petition as was the letter of December 11, 1931, from defendant to plaintiff, soliciting him to release his claims under the one department and become a member under the other; and he also pleaded his acceptance of these terms, setting out the provisions of the "Disability Benefit Department," alleged that he was transformed to this department and paid all assessments therein and received benefits therefrom until February 1, 1934, when defendant discontinued his benefits. These facts were given in resume by counsel for plaintiff in opening statement. During the course of the trial the court announced that he understood that certain facts were pleaded only as "inducement" or matters leading up to the pleading of the "Disability Benefit Department" obligation and counsel for plaintiff stated that that was true.

There are some conclusions of law, inartificially stated in plaintiff's reply which might induce the belief he was not claiming under the "Disability Benefit Department," and also in his brief. But we think the facts pleaded speak for themselves and show the cause of action pleaded to be based upon plaintiff's rights under the "Disability Benefit Department." In construing pleadings we look to the substance of the pleadings and the legal conclusions of the pleader do not alter the nature of the cause of action pleaded, as the same

is disclosed by the facts stated. Defendant did not stand on his demurrer but pleaded over and offered evidence. It thus abandoned the demurrer. The evidence adduced at the trial supported the allegations of the petition.

The constitution and by laws of defendant contain a provision that in case any member shall feel himself aggrieved by any action taken by any constituted authority of defendant, said member, or his local lodge, may appeal from said decision to the higher authorities of the lodge, in the order and manner mentioned therein; and also provided that no suit shall be instituted against defendant in a court of law until after all rights of appeal have been exhausted within the lodge. It is conceded that plaintiff took no step within the lodge to obtain such redress prior to institution of this suit. Failure so to do was urged below, and is urged here, as a bar to this action.

The general secretary and treasurer was given the power, under defendant's constitution and by laws, to discontinue plaintiff's benefits when, for good cause, he deemed plaintiff to be no longer entitled thereto. Plaintiff could have appealed from such decision to the international president, and from an adverse decision there he could have appealed to the board of directors. But, if he had exercised these rights of appeal, and had the final decision been against him, he would not have been bound thereby; he could then have resorted to the courts. This is so whether or not the constitution and by laws so provided. [McMahon v. Maccabees, 151 Mo. 523.] But defendant contends that the principle announced in the last mentioned case does not govern this action, because here the action of the lodge authorities was not made final by the constitution, but that he could thereafter sue in court. In that respect this case differs from McMahon v. Maccabees, *supra,* but it still falls within the general rule there laid down. All such rules and requirements are to be tested, in the final analysis, by determining whether or not they are reasonable. [McMahon v. Maccabees, *supra*; Risinger v. Independent Order of Foresters, 158 Mo. App. 226, l. c. 231, et seq.; Kane v. Lodge, 113 Mo. App. 104, l. c. 117.]

The headquarters of the order is at Cleveland, Ohio, where the International President maintains his office. Any appeal prosecuted before him would require that the claimant, if he desired to be personally present, go there for that purpose. The same is true of an appeal to the board of directors. This would require claimant to journey to a different and foreign state, at considerable expense and time; and to prosecute the successive appeals provided for would require undue delay and might accomplish nothing but merely result in his finally being compelled to sue in the courts of the State. Ordinarily the courts will not require the doing of an unreasonable and useless act before resorting to a legal remedy in court. [State ex

rel. v. Grand Lodge, A. O. U. W., 70 Mo. App. 456, l. c. 465.] The situation here presented is analogous to those situations discussed in Risinger v. Independent Order of Foresters, *supra*, and Kane v. Lodge, *supra*. While those were death claims we think such a rule, if enforced, would be more unreasonable in the case of disability benefits than in the case of death claims. The very purpose of the benefit provisions in this case is to provide claimant with the necessities of life during his inability to earn a living. If he had the money to pay his living expenses during the prolonged procedure, or to pay his expenses to and from Cleveland, Ohio, twice, he probably would not be carrying the benefit certificate at all; and by the time he would finally be permitted to actually enforce his claim at law he might be able to go to work and earn a living. We hold that plaintiff had the right to sue in this case after defendant flatly refused to pay him any more benefits on account of his then condition and gave him notice that the check, to be received in February following, would be his *last* check on account of his claim.

We have examined Crutcher v. Order of Railway Conductors, 151 Mo. App. 622, cited by defendant, and find no conflict between our holding in this case and the holding of the court there. No property right or insurance contract was there directly involved, as was pointed out by the court. State ex rel. v. Tower Grove Turn Verein, 206 S. W. 242, also deals solely with internal matters concerning the order and there is no property right or insurance involved; and State ex rel. v. Supreme Temple Pythian Sisters, 54 S. W. (2d), 468, by this court, likewise deals exclusively in a *mandamus* action with the right of a member to be reinstated after expulsion from the order. Easter v. Brotherhood of Am. Yeoman, 154 Mo. App. 456, is also in harmony herewith. The latter case came to this court a second time, Easter v. Yeoman, 172 Mo. App. 292. Insured failed to pay an assessment when due or within thirty days thereafter, but tendered it during a sixty day period, as provided in the contract. The collector refused to accept same because of the claimed ill health of insured. Insured took no further steps to reinstate and was held to have abandoned the policy. The facts distinguished it from the facts here and those in other Missouri decisions. The case of McMahon v. The Supreme Council, 54 Mo. App. 468, is in direct conflict with the later Supreme Court case of McMahon v. Maccabees, *supra*. We are aware that in Shaw v. American Insurance Union, 33 S. W. (2d) 1052, l. c. 1056, the St. Louis Court of Appeals seem to have construed the effect of some of the above mentioned cases differently. But we think it has overlooked a distinction made in the cases as between by laws that dealt exclusively with some right of membership, as to sit in the lodge, or to participate in its government, as distinguished from by laws dealing with insurance and property rights

primarily. In cases where insurance rights were only secondarily involved, the decisions are almost unanimous in holding that the courts will not take jurisdiction of matters pertaining solely to the internal workings of the lodge, at least not until the member has exhausted all remedies provided therein. [Eminent Household of Columbian Woodmen y. Payne, 88 Southern 454, l. c. 455.] Then too, the primary matter before the court in the Shaw case, *supra,* was one of waiver; and it was decided on that ground.

Defendant has cited decisions from other jurisdictions holding a different view, notably Skrivanek v. Brotherhood of Locomotive Firemen and Enginemen, 269 N. W. 111, a Minnesota case; and Myers et al. v. Jenkins, 63 Ohio, 101, and many others. But equally numerous and strong authority in support of our conclusions, which we hold to be the Missouri rule, may be cited from other jurisdictions, to-wit: Eminent Household of Columbian Woodmen (Miss.), 79 So. 351, l. c. 353; Eminent Household of Columbian Woodmen v. Payne (Ala.), 88 So. 454, l. c. 455; Employee's Ben. Ass'n of Calument & Arizona Mining Co., et al. v. Johns (Ariz.), 249 Pacific 764; Sandor v. Verhovey Aid Association, 199 Ill. App. 199; Nikolich v. Slovenska Nardons Podporna Jednota (N. M.), 260 Pac. 849.

Defendant contends that the constitution and by laws require that plaintiff serve notice upon it of his intention to bring suit in court, thirty days before filing said suit. No such notice was served. "The question of a premature suit is in the nature of a plea in abatement and not a plea at bar." [Young v. Insurance Co., 269 Mo. 1, l. c. 12.] Here defendant denied liability more than a year before suit was instituted. Thereafter on further plea by plaintiff it again denied liability and suggested that he seek the charity of the order. Thereafter it received a letter from plaintiff's attorney of record in this case but still remained unmoved. This suit was filed and service had on January 6, 1936. It was not tried until April 6, 1936, and judgment was not rendered until May 2, 1936. Defendant made no offer of settlement at any time, and doesn't offer any now. It still denies liability on the ground that plaintiff was not, and is not, disabled within the meaning of the policy. In such a case, this court said in Martin v. Continental Ins. Co., of City of New York, 256 S. W. 120, l. c. 121: ". . . the contention overlooks the evidence that the adjuster denied liability and positively refused to pay anything." [See also McKeon v. National Casualty Company, 216 Mo. App. 507, l. c. 518.] It is apparent that the giving of such a notice would have been a vain and useless thing; and would now be vain and useless. The courts do not require the doing of such a thing. This point is ruled against defendant.

Contention is made that the report of medical examination as made by Dr. R. J. Brennan was barred from evidence. No authorities are

presented on this assignment. There could have been no injury resulting to defendant by reason of its being barred from evidence, even if it were properly admissible which we do not hold. The witness was permitted to, and did, refer to the report to refresh his recollection, and his evidence amounted to a reading of the entire report into the record by way of question and answer. However, we know of no rule of law that permits reception of such private records, made by the agent of defendant, with a view to testifying against him, in evidence. It is not the same as a hospital record.

It is contended that the conclusion of fact entered of record by the court do not embrace all of the constitutive facts of the case. Without setting out such conclusions here at length, we have examined same and find that they do not. When requested so to do in a case at law tried without a jury, the court must state conclusions of fact separately from conclusions of law; and such conclusions of fact must include every constitutive fact except such as are admitted in the pleadings or those about which there is no controversy. [Fahy v. Springfield Grocer Co., 57 Mo. App. 73, 1. c. 75; Bailey v. Emerson, 87 Mo. App. 220, 1. v. 225; Cochron v. Thomas, 131 Mo. 258, 1. c. 268.] The Supreme Court held that where the findings of fact are erroneous, or do not include all of the constitutive facts, as here, it is our duty to reverse and remand for further proceedings. [Korneman v. Davis, 219 S. W. 904, 1. c. 908.]

Because of the errors mentioned the cause is reversed and remanded for further proceedings in harmony herewith. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The cause is reversed and remanded. All concur.