By St. Paul J:

# 7650

Edward Morrison et al

vs

Grand Lodge, Knights of Pythias (Col.)

No. 7650

St Paul J:

These are three suits separately brought by Edward Morrison, Job Jackson and Frank Martin, and afterwards consolidated. They are companion suits to that of <u>Walter Johnson</u> against the same defendant decided by us April 15th 1916 (13 Orleans appeals 311), and are the aftermath of the occurences therein recited.

Briefly, these were as follows: One Arthur Dennison was presiding officer(Chancellor Commander) of a subordinate lodge of the Benevolent and Fraternal organization of which defendant is the local *and* responsible head; and the four plaintiffs were members thereof in good standing. Dennison and Johnson had had some differences, growing out of a local (Jefferson Parish) political matter,which finally found its way to the lodge room and culminated in a sudden and unprovoked attack with a loaded pistol by Dennison upon Johnson.

This occurred November 2nd 1908. Thereafter Johnson charged Dennison with the offense, both before the lodge itself and before the criminal courts of the state; and Dennison was found guilty by

149

both tribunals. The assault was witnessed by Jackson and by Martin, and Morrison learnt of it on coming into the lodge immediately afterwards.

## II

Shortly after this there was a meeting of the Board of Deacons of the church to which Morrison, Johnson and Dennison belonged, all three being also members of the board.

It appears that differences between the deacons must be composed before they may sit together, and therefore Johnson and Dennison did not present themselves at the meeting. To make up a quorum it was therefore necessary to send for the pastor of the church. This Well-meaning person inquired why, with so many deacons, his presence was needed; and Morrison thereupon (very naturally) told *of* the "greivance" between Johnson and Dennison, and of their absence in consequence thereof.

On November 17th 1906 (the same night when Johnson laid before the lodge his charge against Dennison, and immediately afterwards) Dennison preferred charges against Morrison "accusing him of publicly and falsely divulging transactions of the lodge pertaining to the difference between himself (Dennison) and Bro. Walter Johnson, and destroying the Peace of the Order." *(The words "and falsely" are interlined).*

At thenext meeting (November 27th) two committies were appointed to investigate these charges. At the next meeting (December 2nd) the committee feported on Dennison's case, and their report was immediately adopted by the lodge; it found Dennison "Guilty of Art. XIX,

150

sec. 1 (page 73) of the Constitution for Subordinate Lodges," read-
ing as follows:

> Section 1. Any member guilty of _disorderly_ _conduct_
> in the lodge, or disrespectful language towards
> another member or officer of the lodge, shall be
> fined _One_ _Dollar._

The committee on Morrison's case did not report until April 5th

1909.    They found him "Guilty as charged."    Thus the minutes;

but there is abundant evidence to show that _a_ _majority_ of the com-

mittee found the accused NOT GUILTY  and that the result mentioned

in the minutes was brought about by the simple process of _erasing_

_the_ _Negative_ _adverb_   at some time between the filing of the report

and its presentation to the lodge.

The lodge however on April 26th 1909, adopted the report _as_ _read_

and Morrison was thereupon suspended (indefinitely) under the provisions

of Article XV, Secs. 1&2 (pages 69-70) of the Constitution for

Subordinate Lodges, reading as follows:

> Section 1. Any member violating any of the obligations,
> established principles, laws or requirements of the
> Constitution or By-laws (or) disclosing the _secret_
> _transactions_ of the lodge ---or guilty of --- _crimi-_
> _nal_ _conduct_ _of_ _any_ _kind_ ---wilfully persistent in
> disturbing the peaceful and harmonious working of the
> lodge---shall be dealt with in accordance with the
> Code of Proceedure"----( That is to say:)
> Section 2; --- _be_ _suspended_ _as_ _a_ _dangerous_ _disturber_
> _of_ _the_ _peace_ _and_ _harmony_ _of_ _the_ _lodge._

_quite_ _a_ _contrast_ here with the lodge's action in Dennison's case.

151

Morrison then appealed to the ? Grand Chancelloe, Sheldon W. Green, directing his attention at the same time to the <u>falsification</u> of the Committee's report, and crediting "his (Dennison's) buother-in-law" with that bit of ingenuity. This same S. W. Green was <u>then</u> ~~who~~ also Supreme Chancellor of the Supreme Lodge.

To this appeal Green, instead of complying with the provisions of Article VI, Sec1, par. 6 (page 14) and Article VII, Sec7 (page 20) of the Constitution, by promptly referring same to the Committee on Appeals and Greivances for <u>their</u> decision to be in turn "submitted for action" to the Grand Lodge, answered on May 6th as follows:

> Replying to yours of 28th ult. would say, as there seems to have been so much trouole between you and the C.C. of your lodge (Dennison), I shall <u>not</u> <u>interfere</u> with the action of the lodge in your case, and <u>may</u> take up the <u>matter</u> <u>if</u> <u>I should</u> <u>find</u> <u>time</u> to make a visit to your lodge in the near future.

This was the last <u>thought</u>, <u>word</u> <u>or</u> <u>deed</u>, by Green, in connection with the matter; and having heard nothing more from that source, Morrison then filed this suit, towit, on April 26th 1910, that is to say, <u>just</u> <u>in time</u> <u>to</u> <u>prevent</u> <u>prescription</u>.

He does not ask reinstatement, but prays for damages, i.e. $500 for loss of <u>benefits</u>, and $500 for the "humiliation disgrace and odium cast upon him" by his illegal suspension.

Why he does not seek reinstatement, is not shown; it may be that like Johnson, he was in <u>fear</u> <u>for</u> <u>his</u> <u>life</u>. And that Johnson's fears were not purely idle is evidenced not only by his own experience but by the further fact that <u>since</u> <u>then</u> one of the witnesses against Dennison (viz: Hutchinson) was also shot by that enterprising char--acter.

152

Pending his trial before the District Court on the charges
preferred against him by Johnson, and just <u>three days</u> after his
preliminary hearing before <u>Paul Felix</u>, the local Justice of the
peace who committed him to the higher court (where he was afterwards
convicted) Dennison framed an accusation before the lodge against
Jackson and Martin, charging them with

> "being dangerous disturbers of the peace and harmony
> of the lodge by <u>publicly</u> divulging transactions in
> the lodge hall of the lodge, on matters pertaining
> to the differences between I, Arthur Dennison, and
> Walter Johnson.  Time and place; July 2nd, before
> the Honorable JUDGE PAUL FELIX."

Thus the <u>original</u>; in the ~~minutes~~ minutes the word "<u>falseily</u>" is written
over the word <u>publicly</u>.

In the Johnson and Morrison cases <u>the minutes</u> show that the
District Deputy Grand Chancellor (one Arthur Griffin) appointed a
majority of each investigating committee, although there is ample
evidence tending to show that even in those cases they were appointed
 or at least <u>suggested</u>, by Dennison himself, the prosecutor.    But
in the present case the very minutes themselves show that the "C. C."
i.e. Dennison himself, had the effrontery to name the majority of
the committee himself, that is to say on July 19th 1909, after he
felt certain that Green "<u>would not interfere</u>."

On Aug. 16th the committee find Jackson and Martin "Guilty as Charged"; which report was promptly adopted by the Lodge. The "D.D.J.C." (Arthur Griffi ) thereupo. suspended them (indefinitely) for "Violation of Obligatio.," and he calmly informed Jackson that it was of no use to appeal; and that the suspension would be for NINETY NINE YEARS.

Jackson, however, did appeal, but got from Green the same satisfaction that Johnson and Morrison had gotten before him; and hence this suit, wherein he seeks the same relief) as asked for by Morrison.

IV

Frank Martin died during the pendency of this suit. As he left neither ascendants nor descendants, and this chain being community property (29 An 215, 110 La. 822), his wife as sole heir thereto (act 80 of 1916) was substituted as plaintiff in his stead. Martin himself asked only the same relief as Morrison and Jackson, and she asks-the-amount-of-same-relief-as-Morrison-and-Jackson,-and-s- asks the same relief as he. But in addition thereto she asks the amount of a policy of insurance upon his life, in her favor, which the deceased held in the Order at the time of his suspension, but upon which no premiums have been paid since then.

At the trial no proof was offered by plaintiff of any appeal having been attempted by Martin. But wether or not Martin had appealed was a fact then peculiarly within the knowledge of Green, and the burden of proof, under the circumstances, was therefore on

154

the defendant.    But the defendant offered no proof whatever on this point.

But, be that as it may, there was no need for an appeal by Martin, and for two reasons, the first whereof applies to Morrison and Jackson as well as to Martin, and the second to Jackson as well as to Martin, as follows;:

/% The Grand and Supreme Lodges, to whom the appeals would succes-lie; are "migratory bodies",,and meet at any place (within their juris diction ?) which they may select; the former <u>annually</u>, the latter <u>bi-ennially</u>.    As the jurisdiction of the Supreme Lodge extends over the whole of "North America, South America, Europe, Asia, Africa and Australia" it follows that its sessions may be held any where on the earth; and that several years may (must) elapse before an appeal could reach and be disposed of by that body; to say nothing of the expense and inconvenience of prosecuting such an appeal.    And any by-law which requires and appeal thus to be pursued, possibly to the utmost extremities of the Globe, and through years of delay, is manifestly <u>UNREASONABLE</u> and therefore void.    Brown vs Supreme Court I. O. F. 176 New York 132 (68 North Eastern 145) ; State ex rel Schrempp vs Grand Lodge A. O. U. W. , 70 Missouri Appeals 456; Schneider vs Local Union, 116 La 270.

2. Because when Green wrote Morrison that he "would not inter-fere", he pre-judged the cases of Jackson and Martin, which involved the same issues as Morrison's; and any attempt on their part to appeal would *have* been vain and useless, and *was* therefore not required.    State vs Grand Lodge, 70 Mo. App. 456(Supra).

These cases are therefore all properly before the court.

V

On the Merits: The cases of Jackson and Martin speak for themsel-ves.    These two were suspended (i. e. expelled) for giving their testimony, under compulsion of law, in a criminal proceeding against Dennison.    Even Green, the Grand Chancellor, NOW admits (in his cross examination, page 76) that their expulsion was illegal, if this was the only reason therefor (See his testimony in Bundle #5).

As to Morrison (who acted in good faith and without malice) it cannot be meant, by the by-law above quoted, that a criminal act should be included among the "secret transactions of the lodge" which must not be disclosed; for the presumption is that the members of the Order, in general, are law abiding citizens.    But if it is otherwise, then the by-law is void, even under the general law, as against public policy; and in this state the mere observance of such a by-law may even amount to a statutory misprision. (Revised Statutes of 1870, Section 856).

VI

156

VI

We have already held in the Johnson case, Supra, following Schneider vs Local Union, 116 La. 270, that a member illegally expelled from an organization has two distinct causes of action; one to be reinstated, the other for damages; and (in effect) that he need not join them in one action, out may pursue them separately; or may even pursue the one and abandon the other. This we believe to be sound law, for the two matters are not so intimately connected that they cannot be severed; one may very well have good reason for not desiring reinstatement in the association (as for instance, Johnson had) and may none the less desire vindication before the public, and reparation for the damages he has suffered to his reputation and feelings, etc.

On the other hand the measure of damages which must govern when he chooses to sue for these alone and not for re-instatement, cannot include those benefits (say, funeral and sick benefits, &c) to which he would be entitled only by preserving (i.e. claiming) his membership in the association, and complying with (or offering to comply with) his own obligations to the association, such as paying dues, assessments, &c; which the plaintiffs in this do not offer to do.

So that we must confine the damages allowed them to compensation for the "humiliation, disgrace and odium cast upon them" by their illegal expulsion; and as in Johnson's case we fix these at $100 for each plaintiff.

157

The judgment appealed from is therefore reversed, and it is now ordered that there be judgment in favor of the plaintiffs and against the defendant, comdemming said defendant to pay to each of said plaintiffs severally the sum of One HUNDRED DOLLARS ($100) with le al interest from date of judgment, and his costs in both courts.