EDWARD HOBBS v. J. J. HICKS and ROSA HICKS, Appellants.—8 S. W. (2d) 966.

Division One, July 30, 1928.

*G. W. Rogers* for appellants.

956

*W. C. Boone* and *Wm. D. Roberts* for respondent.

GENTRY, J.—In the Circuit Court of Ozark County, plaintiff filed his bill in equity, stating that on the —— day of November, 1924, the defendant Rosa Hicks was in possession of and claiming to be the owner of one hundred acres of land in said county, and that defendant J. J. Hicks was her husband; that on said date defendant promised and agreed to sell to plaintiff and plaintiff agreed to purchase said land in consideration of the payment of thirty dollars by plaintiff and the delivery to them by plaintiff of six cows, two hogs, one cream separator and the growing crop on said land; that it was then and there agreed that in consideration of such payment and delivery of such personal property, defendants would execute and deliver to plaintiff a deed conveying all of their right, title and interest in said land. The bill further alleged that said money was paid to defendant Rosa Hicks, said personal property delivered to her, the possession of said real estate turned over to plaintiff and valuable improvements made thereon by plaintiff. It was stated that defendant Rosa Hicks on said date did execute and acknowledge a deed in due form conveying said described real estate to plaintiff, which deed was delivered by her to plaintiff and that said deed was sent by plaintiff to the husband of Rosa Hicks for his signature, but that he refused to sign the same and that said deed has never been delivered to plaintiff, although demand has been made therefor. The answer was first a general denial, and second a plea of the Statute of Frauds, alleging that the purported contract was not in writing, and no part of it executed. The trial court found the issues for the plaintiff and entered judgment of specific performance, from which the defendants have appealed.

I. The first question that presents itself to us is the failure of the defendants, appellants, to comply with the rules of this court in the presentation of their appeal. Neither a fair and concise statement of the facts of the case is contained in the printed record, nor a printed transcript of the record proper and bill of exceptions, as required by the rules of this court, which are often referred to in our opinions. Had the respondent objected to this incomplete printed record and asked that the appeal be dismissed for failure to comply with the rules of this court, we would have been compelled to sustain such motion. But no such motion has been filed, neither has objection been made to the printed record of appellants. On the contrary, respondent has filed an additional statement of the case and an additional ab-

stract, from all of which we feel that the record has been fully presented. Under such circumstances, we must hold that even though appellants have failed to comply with the rules of this court, such failure has been waived by the respondent, and therefore the case is before us for decision.

II. The principle question for decision is the sufficiency of the evidence justifying specific performance. The land in question was  the property of Mart Hobbs (father of respondent and Mrs. Wallace) who died testate two years prior to the institution of this suit, but the record is silent as to when his will was probated. By his will he gave this land to Lucy Hobbs, his second wife, who was the stepmother of respondent. Before her death, Lucy Hobbs, spoken of by appellant and others as "Aunt Lucy," conveyed this land to appellant Rosa Hicks, and also delivered to her some of the personal property in question. There was a controversy as to the ownership of this personal property, respondent claiming that all of it except two cows belonged to his father, and therefore only a part of it was inherited by "Aunt Lucy," and that appellant Rosa was only entitled to that part of said personal property which was the separate property of "Aunt Lucy." Respondent was threatening to contest the will of his father and in that way he hoped to acquire title to the land and some of the personalty in question. Respondent was absent from Missouri when he learned of the death of "Aunt Lucy." On returning to Ozark County, he and his sister, Mrs. Fair Wallace, visited appellant Rosa to see if an arrangement could not be made to settle their property rights without going to law. Rosa stated that she wanted to do the "thing that was right," but that she wanted to talk with her husband, who was engaged in a protracted meeting in a church some miles away in the town of Cureall. Accordingly, respondent and his sister and Rosa drove in a car to the church, and Rosa went into the building and had a conversation with her husband. They soon returned to the car where respondent and his sister were and talked the matter over. After some preliminaries, each side asked the other what they thought would be right about it and each side argued, respondent that the personalty belonged to his father, while appellants insisted that it belonged to "Aunt Lucy," and was acquired by her from her mother's estate. Finally, Rosa said, "I will turn Eddie (respondent) back the land and you folks let me keep the six cows, the separator, the two hogs and the growing crop and give me thirty dollars." She agreed to sign the deed to the land; and her husband said whatever Rosa did was all right with him. Appellant Rosa and her husband got out of the car,

walked off some distance and had another conversation. They then returned to the car and her husband said that whatever Rosa did was perfectly all right with him, and that if the deed was made out and sent to him he would sign it. Accordingly, respondent, Mrs. Wallace and Rosa drove to Gainesville to the law office of Mr. W. C. Boone, where a deed conveying this land to respondent was prepared and signed by appellant Rosa. It was duly acknowledged by her before Judge John Wilhoit, of the probate court of that county. There was then a discussion between them as to when the possession of the place would be given, respondent insisting that he wanted immediate possession in order to send his children to school. It was finally agreed that he should have immediate possession, and he moved in the next week. He has paid no rent, and no rent has been demanded of him. After signing the deed, appellant Rosa handed it to respondent, who mailed it to her husband with the request that he also sign it. At the time the deed was executed, Rosa said she wanted a little paper to show what she was going to get. Accordingly, Mr. Boone prepared the following, which was signed by respondent and his sister:

"We, E. S. Hobbs and Fair Wallace, agree to relinquish all the right and claim we have against six head of cattle and one cream separator and two hogs that Rosa Hicks now has, which property was a portion of certain property owned by Mart Hobbs, provided the said Rosa Hicks delivers to E. S. Hobbs a deed to that portion of the Mart Hobbs farm that is now in the name of Rosa Hicks. Said deed to be signed by Rosa Hicks and J. J. Hicks, her husband. Said Rosa Hicks is to have the crop now on the place.

"FAIR WALLACE,

"E. S. HOBBS."

On taking possession of the land, respondent cleared some two acres of it and repaired the lot and yard fences. Jack Jones, who conducted a store in the neighborhood of this land, had an account amounting to thirty dollars against Reverend J. J. Hicks, husband of Rosa. After signing the deed, respondent and Rosa visited the store and asked Mr. Jones to charge this account against respondent and to give her husband credit for the same. This was done and Mr. Jones gave a receipt showing the payment of thirty dollars on the account of J. J. Hicks by charging the same against respondent; this receipt was turned over to and retained by Rosa. Mr. Jones testified that he looked to respondent for payment and that he had no claim against J. J. Hicks. Mrs. Wallace testified that some days after the execution of the deed, Rosa stated that she felt better, that she was glad she signed the deed and glad the matter had been settled, without going to law. She made similar statements to others.

When the deed was sent to her husband, he refused to sign the same and never has signed it. Appellant Rosa and her husband testified that no agreement was ever entered into between them and respondent for the conveyance of his land, but that the matter was left in doubt. She admitted the visit to her by respondent and Mrs. Wallace, admitted that she rode with them to the church to see her husband, and admitted that they there had a talk regarding the matter and that respondent offered her the six cows, the two hogs, the cream separator, thirty dollars and the growing crop, but denied that she and her husband agreed to accept of the same. The husband testified that the conversation near the church was general and that nothing was said about the six cows, two hogs, cream separator, thirty dollars or the growing crop. He admitted that the deed to respondent came to him through the mail from respondent and that it had been signed and acknowledged by his wife; and also admitted that he had refused to sign it. Rosa admitted signing the deed, acknowledging the same before the probate judge, and its delivery to respondent, but said she signed it because "they just out-talked her."

Under the repeated rulings of this court, respondent's evidence was sufficient to justify the chancellor in decreeing specific performance. True, the *onus* in such a proceeding is upon the plaintiffs. [Taylor v. Von Schraeder, 107 Mo. l. c. 225.] And our authorities also hold that such a contract must be established by evidence so cogent as to leave no room for reasonable doubt in the mind of the chancellor. We think the evidence in this case fully measured up to the requirements of the numerous decisions of this court on this subject. The actions of the parties as well as the testimony of respondent and his sister, Mrs. Wallace, clearly established the agreement, and leave no doubt whatever as to the terms thereof. In fact, appellant Rosa actually signed the deed and visited the office of the probate judge where she acknowledged the same. Before delivering it to respondent, she was careful enough to ask that a paper be given her showing what property she was to receive in payment for her interest in this land. Such a paper was prepared and signed by respondent and his sister and delivered by them to her, and there is no evidence that she ever returned or offered to return either the paper or the personal property. These facts clearly showed the existence of the agreement and take the same out of the Statute of Frauds.

Again, possession of the real estate was given by Rosa to respondent, who moved into the same and has never paid nor been asked to pay rent therefor. This act on his part is referable alone to the contract alleged and proved by him at the trial; and doubtless was considered by the chancellor as a strong circumstance in corroboration of the existence of such a contract. [Pomeroy on Specific Per-

formance of Contracts (3 Ed.) sec. 174; Fry on Specific Performance (5 Ed.) sec. 325; Bispham, Principles of Equity, sec. 385; 2 Story on Equity Jurisprudence, sec. 1045.]

Besides, the evidence shows without contradiction that after respondent took possession of the property, with the knowledge and consent of appellants, he made improvements on the property, treating it as he would treat his own estate; and such acts, in connection with the other evidence, justified specific performance. [Pomeroy on Specific Performance of Contracts (3 Ed.) sec. 126.] On that subject, this court, speaking through Judge HIGBEE, said: "It has long been the rule in Missouri: The taking of and continuance in possession by a vendee under a parol contract made by a vendor, with his consent, the payment of a substantial part or all of the purchase price, and the making of valuable improvements, are acts of part performance, when referable solely and unequivocally to the parol contract." [Sheerer v. Sheerer, 229 S. W. 1. c. 196.]

And in the case of Ross v. Alyea, 197 S. W. 270, Judge WHITE, in speaking for this court, said: "In the sale of land, possession by the vendee in pursuance of the contract of sale, without more, has been held to be sufficient part performance to take the case out of the operation of the Statute of Frauds. If the possession is accompanied by the erection of improvements upon the land, the courts in this State have always held the act sufficient to take the contract out of the statute." [Bless v. Jenkins, 129 Mo. 1. c. 657.]

The chancellor heard the evidence, saw the witnesses and accepted respondent's evidence as correct. While in a suit of this character this court is not bound by his findings, yet this court must defer to some extent to his findings owing to his superior opportunity to weigh the testimony. [Fifer v. McCarty, 243 Mo. 1. c. 48; Waddle v. Frazier, 245 Mo. 1. c. 405-6.]

III. While not directly challenging the adequacy of the consideration, yet appellants intimate that this is a contract which should not be enforced because the land in question is worth more than the personal property which appellant received. This question cannot be considered for two reasons. First, there is no allegation to that effect in defendant's answer, and the case was not tried on that theory. On that subject, Judge BARCLAY said that parties to litigation are regarded as bound here by the position assumed by them in the trial court. [Tomlinson v. Ellison, 104 Mo. 1. c. 112; Dunnigan v. Green, 165 Mo. 1. c. 113; Finkelburg on Mo. App. Practice, p. 154; Elliott on Appellate Procedure, sec. 489.] Second, there is no evidence as to the value of the six cows, nor the two hogs, nor the cream separator, nor the growing crop. Neither is there any evidence as to the value of the land in question. Whether respondent had a reasonable

chance to successfully contest the will of his father, whereby this land was given to "Aunt Lucy," and whether he could have recovered all or any part of the personal property, were questions for the consideration of the parties, and the evidence shows that they were not only considered but argued at length. Having reached the conclusion that it was better for them to settle their differences by conveying the land to respondent, and by respondent's release of his interest in the personalty and the growing crop, their decision is binding, in the absence of fraud or mistake. There is neither allegation nor proof of fraud or mistake.

Let the judgment be affirmed. All concur.