STATE OF MISSOURI at the relation of THE BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN, Relator, v. HOPKINS B. SHAIN, ROBERT M. REYNOLDS and EWING C. BLAND, Judges of the Kansas City Court of Appeals.—123 S. W. (2d) 1.

Division One, December 20, 1938.

*Harold C. Heiss, Edward E. Naber, S. M. Carmean, James T. Blair, Jr., P. E. Reeder* and *Charles J. Winger* for relator.

*C. B. Burns* for respondents.

BRADLEY, C.—This is a certiorari proceeding to quash the record and opinion of the Kansas City Court of Appeals in Roberson v. Brotherhood of Locomotive Firemen and Enginemen, 114 S. W. (2d) 136. ▉ We are concerned only with whether or not the opinion of the Court of Appeals is in conflict with the last controlling decision of this court on the points ruled. [State ex rel. Mo. Mut. Assn. v. Allen et al., 336 Mo. 352, 78 S. W. (2d) 862, and cases there cited.] As to the facts we are limited to such as appear in the opinion. [State ex rel. Superior Mineral Co. v. Hostetter, 337 Mo. 718, 85 S. W. (2d) 743.] However, where reference is made in the opinion to pleadings and documents, these may be considered as though set out in full in the opinion. [State ex rel. Talbott et al. v. Shain et al., 334 Mo. 617, 66 S. W. (2d) 826, l. c. 827, and cases there cited; State ex rel. Mut. Life Ins. Co. v. Shain et al., 339 Mo. 621, 98 S. W. (2d) 690; State ex rel. Fidelity & Deposit Co. v. Allen (Mo.), 85 S. W. (2d) 455.]

Relator contends that the opinion of the Court of Appeals conflicts, in two respects, with the last controlling decisions of this court: (1) That the Roberson case was determined on appeal on a theory different from that upon which it was tried; (2) that the opinion,

in effect, made a new and different contract to that existing between relator and Roberson.

We ascertain from the opinion that Harrison L. Roberson, a member of relator, sued relator on a contract of disability benefit insurance. The cause was tried before the court without a jury, and resulted in a judgment in favor of Roberson. Appeal was taken to the Kansas City Court of Appeals, and the judgment was reversed and cause remanded, because the trial court did not find as to all of the constitutive facts.

It appears that relator is "a voluntary, unincorporated labor union, with a grand lodge and many subordinate lodges;" that "it has a representative form of government with a constitution and by-laws and practices secret ritualistic lodge work; that its membership is confined exclusively to one class of persons who are engaged in a single hazardous occupation, to-wit, persons employed as locomotive firemen and enginemen; and that it carried on insurance business, without profit, for the exclusive benefit of its members.'"

Roberson was employed as a locomotive engineer, and became a member of relator order in 1914, and received a certificate or policy in the relief department, and prior to 1928, he received a certificate in the pension department. In 1928, and while in good standing, he became totally disabled to perform any work on a locomotive engine, and was thereafter taken out of employment by the railroad company for which he worked, and was granted a pension by relator under his pension certificate. In 1931, and after Roberson was granted the pension, relator abolished its relief and pension departments, effective January 1, 1932, and established a disability benefit department, "under the provisions of which its members who were then adjudged to be permanently and totally disabled and who were then receiving benefits from the pension department, upon releasing defendant (relator) from all claims on account of the pension department, would be permitted to become members of the disability benefit department." Roberson was informed August 26, 1931, by relator, of the abolishment of the relief and pension departments and of the new arrangements. December 11, 1931, he was informed by relator "that he was adjudged to be totally and permanently disabled as provided in the law governing the disability benefit department, and that in exchange for his release of the pension department and the payment of $1.25 per month assessment thereafter, he would be immediately transferred to the disability benefit department, and would immediately receive benefits therefrom at the rate of $50 per month."

Roberson signed up, releasing the pension department, and thereafter received $50 per month until February 1, 1934, when relator notified him "that a physical examination, which it had caused to be

made of him in its routine check up on November 18, 1933, had shown that he was not 'totally and permanently disabled' as defined in the laws'' of relator. Dr. Brennan, a witness for relator at the trial, testified that he made the examination of Roberson, and to the effect that at the time (November 18, 1933) Roberson was not "totally and permanently disabled from or directing any work, but that he could do light work.'' The evidence on the part of Roberson was to the effect that he had been continuously, since 1928, until the date of the trial and then, was "wholly unable to perform any work.''

It appears from the opinion that relator "is doing a fraternal, beneficiary insurance business in Missouri, and its contracts of insurance will be governed by the law applicable to such contracts,'' and says the opinion, since relator "is a fraternal beneficiary insurance company and the contract sued on is one of that character, it follows that the policy, the application, and the constitution and by-laws of defendant (relator) must all be considered together as forming the contract of insurance.''

The opinion says that "it is apparent from the conclusions of fact and law as declared by the trial court, as well as from the court's refusal to find and make other conclusions of law and of fact as requested so to do by defendant (relator), that the (trial) court determined the case on the theory that the contract sued on is governed by the law relative to 'old line' insurance contracts.'' This, says the Court of Appeals, "was an erroneous theory,'' but that "if the judgment below was for the right party, even though it was arrived at on a wrong or different theory of law from that upon which it must rest, yet it should be affirmed on appeal.''

So far as pertinent here the finding of facts by the trial court and referred to in the opinion is as follows:

"The court finds that the defendant denied liability and denied that it was indebted to the plaintiff in any sum.

"The court finds that the defendant has its headquarters in the city of Cleveland, state of Ohio, operating under the laws of Ohio, and at no time has had a license or authority to transact business in Missouri from the superintendent of insurance, and that the defendant was not organized under the laws of the state of Missouri, and has never appointed the superintendent of insurance of the state of Missouri, in writing, to receive service of process.''

Relator contended that it was exempt from complying with the law relative to fraternal, beneficiary associations, because it limited its membership to "one hazardous occupation.'' [See Sec. 6021, R. S. 1929, amended, Laws 1933, p. 273.]

The given declarations of law, pertinent here, are as follows: "The court declares the law to be that the contract sued on in question

is not governed by the laws of Missouri relating to fraternal, beneficiary societies.

"The court declares the law to be that where the defendant denied liability it waived the requirement of the by-laws providing for appeals within the order, and provisions of the requirement of written notice thirty days before action.

"The court declares the law to be that the provisions of Article 13 of Chapter 37 of the Revised Statutes of Missouri of 1929 (relating to fraternal, beneficiary associations), do not govern the contract sued on and the failure of defendant to comply with the provisions of Article 13, Chapter 37 of the Revised Statutes of Missouri of 1929, makes the contract sued on governed by the insurance laws of the state of Missouri.

"The court declares the law to be that the denial of liability by the society waived the requirement for submission to the tribunals of the order before bringing an action at law against the defendant."

The opinion says that defendant (relator) contended that Roberson "is bound by positive declarations in his pleadings and that same irrevocably commit him to an entirely different theory than that upon which he recovered, and that he disclaims therein that he claims under the disability benefit department." Then the Court of Appeals goes on to say that if Roberson recovers at all, it must be under his certificate in the disability benefit department, "because he is conclusively bound by his written and signed application for membership therein, and his renunciation, in the same instrument, of all rights he might have under the pension department." The opinion says that "the provisions of the 'pension' department were pleaded in his petition as was the letter of December 11, 1931, from defendant to plaintiff, soliciting him to release his claims under the one department and become a member under the other; and he also pleaded his acceptance of these terms, setting out the provisions of the 'Disability Benefit Department,' alleged that he was transformed to this department and paid all assessments therein and received benefits therefrom until February 1, 1934, when defendant discontinued his benefits."

Apparently, Roberson did not have a disability benefit certificate as such, but he had relator's agreement to place him in this department, and as the opinion shows, he had been receiving $50 per month from this department until these payments were stopped. He asked for and recovered a judgment for $1150, and this was based on $50 per month from the time his payments were stopped. He denied, in his reply "that he ever acquiesced, accepted, or adopted the provisions of the disability benefit department," but this is contrary to his petition, and the opinion says a mere conclusion.

Relator, in its answer, pleaded that payments to Roberson were stopped, because upon examination November 18, 1933, it was found that he "was not totally and permanently disabled or so totally and permanently disabled as to bring him within the provisions of said disability benefit department." And relator requested the trial court to find, but was refused, that under Section 23 of Article 8 of its Constitution, total and permanent disability "prevents a member from engaging in any occupation, profession, or business or from performing or directing any work for remuneration or profit."

The first assignment of conflict that the Roberson case was determined on appeal on a theory different from that upon which it was tried, is based on the fact that the trial court held that, so far as appeared in the Roberson case, relator was not a fraternal, beneficiary association, but was what is commonly called an old line company.

As supporting the first assignment of conflict relator cites Henry County v. Citizens Bank, 208 Mo. 209, l. c. 225, 106 S. W. 622; Snyder v. American Car & Foundry Co., 322 Mo. 147, 14 S. W. (2d) 603, l. c. 606; City of St. Louis v. Wright Contracting Co. et al., 210 Mo. 491, 109 S. W. 6; Hobbs v. Hicks et al., 320 Mo. 954, 8 S. W. (2d) 966, l. c. 969; Eisen v. John Hancock Mut. Life Ins. Co., 230 Mo. App. 312, 91 S. W. (2d) 81, l. c. 91; State ex rel. Bush v. Sturgis et al., 281 Mo. 598, l. c. 604, 221 S. W. 91, 9 A. L. R. 1315; Chinn v. Naylor, 182 Mo. 583, l. c. 595, 81 S. W. 1109; Pienieng v. Wells (Mo.), 271 S. W. 62, l. c. 66; Paramore v. Campbell, 245 Mo. 287, 149 S. W. 6; Brunswick v. Standard Accident Co., 278 Mo. 154, 213 S. W. 45, l. c. 46; Benz v. Powell, 338 Mo. 1032, 93 S. W. (2d) 877, l. c. 879.

Aloe v. Fidelity Mut. Life Assn., 164 Mo. 675, 55 S. W. 993, was on a life insurance policy. The defense was breach of warranties made in the application of the insured. It was conceded that the alleged breaches were on immaterial matters and that the matters misrepresented did not contribute to the death of the insured. Plaintiff contended that the defendant could not interpose such defense, because of what is now Section 5782, Revised Statutes 1929 (Mo. Stat. Ann., sec. 5782, p. 4423), providing that "no representation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and if so contributed in any case, shall be a question for the jury." The defendant in the Aloe case contended that it was an assessment company and was exempt from the provisions of said section.

The reply alleged that the contract was controlled by the law of Pennsylvania, "and that by the statute of that State the answers (to questions in the application) pleaded by defendant were misrepresentations as contradistinguished from warrants and did not, by reason of the statute, avoid the policy unless the answers were material to the risk or were made in bad faith." The defendant moved to strike that part of the reply pleading the Pennsylvania law, but this motion was overruled. The judgment below was for the plaintiff, based on the theory that the defendant was an assessment company, but that the policy in suit was governed by the law of Pennsylvania. On appeal to this court, it was held, in division, that what is now* Section 5782 was applicable to assessment companies, overruling prior decisions to the contrary. The cause went to banc, and it was held by the majority that the policy was governed by the law of Missouri, and that what is now Section 5782 did not apply to assessment companies. The judgment was affirmed, not on the theory under which the trial court proceeded, but on the theory that "the defendant was not an assessment company, but a regular old line company."

The term *theory* when used in connection with the trite rule that recovery cannot be had in an appellate court on a different theory than that upon which the case was tried, evidently does not have reference to what *facts* the evidence establishes, but the term *theory*, when so used, has refernce to *cause of action,* or *defense,* or to "a matter essential to the rendition of the judgment." [State ex rel. Bush v. Sturgis et al., 281 Mo. 598, 221 S. W. 91.]

As appears, supra, relator cites a number of cases holding that recovery cannot be had in an appellate court on a *theory* different than that upon which the case was tried. In the Henry County case, supra, 208 Mo. l. c. 225, 106 S. W. 622, it is said that "it is fundamental that the recovery sought in this proceeding by the plaintiff must stand or fall on the cause of action embraced in the pleading. It cannot sue upon one cause of action and recover upon another. Another cardinal rule applicable to pleadings and practice, which has repeatedly received sanction by this court, is 'that a party will not be permitted to try his cause upon one theory in the trial court and if unsuccessful on the legal battlefield of his own choosing, spring a fresh theory upon his adversary and undertake finally to enter the contest in this court forming entirely different lines of legal battle.' "

In Snyder v. American Car & Foundry Co., supra (322 Mo. 147, 14 S. W. (2d) 603, l. c. 606], is this: "The ultimate charge in the petition is that defendant failed to provide and maintain a reasonably safe place for plaintiff to work. The case was tried and submitted to the jury, by instructions on both sides, upon the issue of defendant's negligence in exposing plaintiff to an unusual danger,

without any notice or warning thereof, while he was engaged in the due performance of his duty. And there is nothing in the record to indicate that defendant relied upon the fellow-servant doctrine as a bar to plaintiff's recovery, or that it undertook to raise that question in the court below, either in the development of the facts or in its given or refused instructions. It is elementary that a cause must be heard in the appellate court upon the same theory as that upon which it was tried.''

In City of St. Louis v. Wright Contracting Co., supra, it is said that ''the case must be tried in this court upon the same theory as in the court below.'' The meaning of the term *theory* as there used is plain from headnote 3 (210 Mo. 491, 109 S. W. 6) : ''Where the city sued on the contractor's bond as trustee for the property owners for the excess they were required to pay for a public improvement above what they would have been compelled to pay had the contractor performed his contract at the prices designated in his contract, it cannot, after judgment rendered in its favor, in order to avoid the fatal effect of such erroneous theory of recovery, abandon all the allegations of its petition which based its right to recover on the existence of such trusteeship, ask the court to disregard those allegations as surplusage, argue that the bond was made with the city for the personal benefit and indemnification of the city, and ask that the judgment be permitted to stand. It cannot sue as a trustee and recover a personal judgment. That would be an abandonment of the cause of action on which it recovered judgment, and the substitution of an entirely different judgment.''

State ex rel. Bush, Receiver, v. Sturgis et al., 281 Mo. 598, 221 S. W. 91, cited, supra, was in certiorari to quash the opinion in Kerr v. Bush (Mo. App.), 215 S. W. 393, by the Springfield Court of Appeals. The Kerr case was by a widow to recover for the death of her husband, killed on a crossing. The negligence alleged was failure to give the statutory signals by bell or whistle in approaching the public crossing. One of the issues was whether or not the deceased reached the crossing by walking along the dirt road or by walking along the railroad. In the trial court the plaintiff proceeded on the theory that the deceased reached the crossing from the dirt road, and the jury was instructed that if it were found otherwise, then the plaintiff could not recover. Plaintiff recovered and defendant appealed. The Court of Appeals held that all the evidence on the question was to the effect that the deceased reached the crossing by walking along the railroad, and that there was no evidence to support the finding that the deceased reached the crossing from the dirt road, but held that the route traveled by the deceased to reach the crossing was not material. This court refused to quash. The opinion by this court discussed the subject of changing theories on appeal and

cited a number of cases, and said (281 Mo. 598, 221 S. W. l. c. 92):
"From these cases, relied upon by relator, and many others which
might be cited to the same effect, it appears that the difference in
theory between the trial of a case and its review and disposition upon
appeal must, to authorize the invoking of the rule (against changing
theories) involve a matter essential to the rendition of the judgment.
The correctness of this conclusion is rendered more apparent when we
consider the province of an appellate court, which is that of review.
Such review is for the purpose of ascertaining if the real matters in
issue was tried without error."

■ We do not deem it necessary to review other cases on the
first assignment of conflict. All we can perceive respecting change
of theory as to the classification of relator as an insurance company,
is that, under the pleadings and the evidence, the trial court found
that relator was an old line insurance company, while the Court of
Appeals on the same pleadings and the same evidence found that re-
lator was a fraternal, beneficiary association. We rule the first as-
signment of conflict against relator.

We repeat, for convenience of the reader, the second assignment of
conflict, that the opinion sought to be quashed, in effect, made a
new and different contract to that existing between relator and Rob-
erson. As supporting this assignment relator cites State ex rel. Am.
Fire Ins. Co. v. Ellison, 269 Mo. 410, 190 S. W. 879, l. c. 882; State
ex rel. Western Automobile Ins. Co. v. Trimble, 297 Mo. 659, 249
S. W. 902, l. c. 905; Prange v. International Life Ins. Co., 329 Mo.
651, 46 S. W. (2d) 523, l. c. 526; State ex rel. Mutual Benefit Health
& Accident Assn. v. Trimble, 334 Mo. 920, 68 S. W. (2d) 685, l. c.
688; Myers v. Union Electric Lt. & P. Co., 334 Mo. 622, 66 S. W.
(2d) 565, l. c. 569; Seigle v. First National Co., 338 Mo. 417, 90 S.
W. (2d) 776, l. c. 784; Monticello Bldg. Corp. v. Monticello Invest-
ment Co., 330 Mo. 1128, 52 S. W. (2d) 545, l. c. 551. Relator also
cites cases from the courts of appeals, but these cannot be considered
in certiorari to quash an opinion. State ex rel. Highway Commission
v. Shain et al., 340 Mo. 802, 102 S. W. (2d) 666, l. c. 670; State ex
rel. Mann v. Trimble et al., 290 Mo. 661, 232 S. W. 100.

■ It appears that relator, in addition to defending on the ground
that Roberson was not totally and permanently disabled within the
meaning of the law, defended also on the ground that Roberson did
not, after his pension payments were discontinued and before bring-
ing suit, take the steps, as to appeal, within the order and required
by its constitution and by-laws. The opinion recites that "the con-
stitution and by-laws of defendant contain a provision that in case
any member shall feel himself aggrieved by any action taken by any
constituted authority of defendant, said member, or his local lodge,

may appeal from said decision to the higher authorities of the lodge, in the order and manner mentioned therein; and also provided that no suit shall be instituted against defendant in a court of law until after all rights of appeal have been exhausted within the lodge. It is conceded that plaintiff took no step within the lodge to obtain such redress prior to institution of this suit. Failure so to do was urged below, and is urged here, as a bar to this action." The Court of Appeals held that these conditions precedent, so to speak, before seeking redress in the courts, were unreasonable and void.

Roberson pleaded in his reply that the provisions of relator's constitution and by-laws requiring an aggrieved member to exhaust, before resorting to the courts, the remedies provided within relator order, were "void, immoral and against public policy, and attempts to deprive the courts of jurisdiction." And he pleaded to the same effect as to the provision of relator's constitution and by-laws requiring an aggrieved member to give 30 days' written notice "of his intention" to bring suit. The order of procedure of an aggrieved member, under the constitution and by-laws, was an appeal, either by himself or his local lodge, to the international president of relator, and if satisfactory redress was not there obtained, then he could appeal to the board of directors. If no satisfactory redress is obtained from the board of directors, then he could give the 30 days' written notice of his intention to sue, and proceed in the courts to redress his grievance.

The trial court held that such required procedure, before an aggrieved member could seek redress in the courts was waived by relator by denying liability, while the Court of Appeals held that such required procedure was unreasonable and void. This appears in the opinion: "The headquarters of the order is at Cleveland, Ohio, where the international president maintains his office. Any appeal prosecuted before him would require that the claimant, if he desired to be personally present, go there for that purpose. The same is true of an appeal to the board of directors. This would require claimant to journey to a different and foreign State, at considerable expense and time; and to prosecute the successive appeals provided for would require undue delay and might accomplish nothing, but merely result in his finally being compelled to sue in the courts of the State. Ordinarily the courts will not require the doing of an unreasonable and useless act before resorting to a legal remedy in court." The opinion considers at some length the question of the reasonableness of the requirements of an aggrieved member before he could resort to the courts. Many cases were cited and discussed.

State ex rel. American Fire Ins. Co. v. Ellison et al., 269 Mo. 410, 190 S. W. 879, cited by relator quashed the opinion of a Court

of Appeals in Terminal Ice & Power Co. v. American Fire Ins. Co. (Mo. App.), 187 S. W. 569. A clause provided that the policy would be void if, with the knowledge of the insured and without the endorsed consent of the insurer, foreclosure proceedings under mortgage or deed of trust were commenced against the insured property. The Court of Appeals held that the breach of this clause would not void the policy unless the foreclosure proceedings actually increased the risk, and that since the foreclosure proceedings were merely for the purpose of "straightening out of the title," the risk was not increased, and the policy was not made void. In Springfield Steam Laundry Co. v. Traders' Ins. Co., 151 Mo. 90, 52 S. W. 238, this court had ruled on practically the identical point as was involved in State ex rel. Am. Ins. Co. v. Ellison et al., supra, and since the ruling of the Court of Appeals was in conflict with the ruling in that case, the opinion was quashed.

State ex rel. Western Automobile Ins. Co. v. Trimble et al., 297 Mo. 659, 249 S. W. 902, quashed the opinion in Pickel v. Western Automobile Ins. Co. by a Court of Appeals (not reported). The Pickel case was an action on a policy of indemnity insurance. Pickel, while driving his car, collided with another car and injured two persons. He notified his insurer, and it denied liability. The injured parties sued Pickel and each recovered a judgment. "In payment and satisfaction" of the two judgments, Pickel gave to each of the judgment creditors his promissory note for the amount of the judgment, and secured these notes by a deed of trust on his land, and the judgments were released "upon the margin of the records thereof." Pickel then sued his insurer upon the policy to recover the amount of the judgments and expenses incurred, and recovered a judgment for the full amount. The insurer appealed, and contended, among other things, that Pickel had not *paid* the judgments and had no right to sue, but the Court of Appeals held otherwise. The insurer's by-laws, a part of the policy, provided that a member would "be indemnified for any sums *paid* by such member in satisfaction of any judgment" (italics ours). The opinion of the Court of Appeals was quashed and State ex rel Am. Fire Ins. Co. v. Ellison et al., supra, was cited in support of the conclusion reached.

State ex rel. Mutual Benefit, Health & Accident Assn. v. Trimble et al., 334 Mo. 920, 68 S. W. (2d) 685 quashed the opinion by a Court of Appeals in Miller v. Mutual Benefit, Health & Acc. Assn., 56 S. W. (2d) 795. Miller brought suit on his policy to recover for loss of time caused by sickness. Other conditions met, the insured could recover under his policy, at the rate of $100 per month, for loss of time, if his sickness confined him "continuously within doors" and required "regular visits therein by legally qualified physician."

He could recover at the rate of $50 per month for loss of time from sickness which did not continuously confine him within doors, but which required "regular medical attention." The insured sought recovery for loss of time under both provisions. For being continuously confined by sickness he sought to recover for the time from April 28th to May 5th, and the time during which he was not continuously confined he sought recovery for the period from May 5th to May 23rd. He recovered judgment and the insurer appealed. The Court of Appeals affirmed the judgment. The opinion was quashed. The court cited and quoted from Prange v. International Life Ins. Co. (cited by relator in the present case), 329 Mo. 651, 46 S. W. (2d) 523, 80 A. L. R. 950, as follows:

"Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties; they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they have themselves made."

It will be noted that the cases we have reviewed, on relator's second assignment of conflict, deal with conditions upon which liability depended. And such is the situation in the other cases cited by relator, while Roberson's case concerned matters of procedure within relator's order before Roberson could resort to the courts for redress. It is not claimed that *liability* of relator was conditioned on Roberson complying with the required conditions precedent before he could resort to the courts. Relator concedes that had such been the case, the conditions would have been void. [See McMahon v. Supreme Tent Knights of the Maccabees, 151 Mo. 522, 52 S. W. 384.]

McMahon v. The Supreme Council Order of Chosen Friends, 54 Mo. App. 468; Crutcher v. Order of Railway Conductors, 151 Mo. App. 622, 132 S. W. 307; State ex. rel. Cammann v. Tower Grove Turn Verein et al. (Mo. App.), 206 S. W. 242, deal with procedural requirements within the order as conditions precedent to resorting to the courts, and it would seem, to support relator's second assignment, as to conflict. However, as we have noted, supra, decisions by courts of appeals will not be considered in certiorari to quash an opinion. Also, we might say, in passing, that for the most part where such requirements have been in issue their reasonableness has been considered as decisive.

We find no authority to support relator's second assignment of conflict. The writ should be quashed, and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.