THE STATE OF MISSOURI at the Relation of R. L. ALDEN ET AL., for Themselves and for and on Behalf of all of the Members of Local Union No. 264, of THE INTERNATIONAL HOD CARRIERS' BUILDING AND COMMON LABORERS' UNION OF AMERICA, Plaintiff, v. THE HONORABLE JOHN F. COOK, Circuit Judge of Jackson County, Missouri, and of Division No. 2 Thereof, Respondent, No. 41690—227 S. W. (2d) 729.

Court en Banc, March 13, 1950.

*Paul Barnett* for relators.

254

*Clif Langsdale* for respondent.

ELLISON, J.—This is an original proceeding in mandamus brought here by 85 members of Local Union No. 264 of The International Hod Carriers' Building and Common Laborers' Union of America, against Hon. John F. Cook, one of the judges of the Jackson county circuit court, to compel him to set aside his order dismissing a class action brought in his court by the 85 relators, out of 1500 members of the Union, against the three defendants, the president [who is also business representative], the financial secretary and treasurer, and the recording and corresponding secretary.

The relators' petition below seeks an accounting of, and a joint and several judgment against the defendants for, Union funds allegedly withdrawn by the defendants wrongfully and conspiratorially, and for a preliminary and permanent injunction restraining the president and secretary of the Union from such unlawful practices. It alleges the three defendants, conspiring together, had permitted large sums of money to be paid out of the treasury of the Local Union for twelve enumerated unwarranted purposes, such as: political use; personal benefit; purchase of a private automobile; unauthorized expenses, etc. The action is brought on the theory that plaintiffs have no adequate remedy at law or within the Union and its parent body, The International Union, both of which are unincorporated. The defendants filed a motion to dismiss the action for want of jurisdiction in respondent's court on the ground that the plaintiffs had not exhausted their remedies within the two Unions. The respondent judge dismissed the action on the theory that he had no *jurisdiction* for that reason.

The record is voluminous, and the facts will be condensed as much as possible. Under the by-laws of the Local Union the defendant Irving, as president, and the defendant Livingston, as financial secretary-treasurer, are authorized to sign jointly checks drawn on the Union treasury. The defendant Butcher, as recording and corresponding secretary keeps the minutes of Union meetings, which should show what payments have been allowed or disallowed. The other officers are a vice-president, sergeant-at-arms, three auditors or trustees and an Executive Board. This board consists of the president, vice-president, recording-corresponding secretary, financial secretary-treasurer and three other members elected who are not officers.

The constitution of the Local Union provides that charges by one member against another or by members against officers * * *, shall be brought before the Executive Board of the Local Union, which shall constitute the Trial Board. If any charges are so brought, they must be filed with the recording secretary of the Local. Any member who has good cause therefor may bring charges against any other member or officers of this Local. The charges must be in writing, and clearly and specifically set forth the violation or wrong

charged. They must be signed by a member in good standing and filed in duplicate. Following that are provisions as to notice, hearing of testimony, and rendering of decision. If either party is aggrieved by the finding of the Trial Board, he may in 30 days take an appeal to the Executive Board of the International Union.

When the Executive Board of the Local sits as a trial board, no member shall sit on a case in which he is directly interested or involved. In such case the President of the Local shall appoint a substitute or substitutes from the members in good standing. If the President is disqualified—as he was here along with the two secretaries—then the Vice President must appoint the necessary substitutes, which in this instance would be three.

The defendants in their motion to dismiss showed by an affidavit of defendant Livingston attached thereto, that Art. 13, Sec. 3 of the constitution of the Local Union forbids any *member* thereof to resort to any court of law or equity in any matter involving a question arising out of his membership in The International Union before he has exhausted all the remedies prescribed by the constitution and by-laws of the Local as well as those of the District and International Unions. Likewise, Art. 12, Sec. 3 of the constitution of The International Union similarly provides no *local union* shall resort to a court of law or equity in any matter arising out of its charter or membership in The International Union unless it first exhausts all the remedies within The International Union.

Art. 5, Sec. 2, vests all the executive and judicial power of The International Union in the General Executive Board when a Convention is not in session. The headquarters are in Washington, D. C. It further provides the judicial powers of that Board shall be both original and appellate, and that it shall have original jurisdiction of all charges and complaints by and against the officers and representatives of the International Union; those against a local union or other subordinate body; * * * and that it shall be vested with appellate jurisdiction over *all charges and complaints* against and between members, and against and between members and local unions.

Further Art. 5, Sec. 8 of the constitution of the Local Union provides the treasurer thereof shall have charge of its funds, and shall pay all bills by check countersigned by the president. He (the treasurer) shall give a detailed written report at a regular meeting at least once each month, showing the transactions and standing of the Union, and shall present his books for inspection. The Auditors or Trustees shall at the end of each quarter audit the books of the Financial Secretary and Treasurer and make a detailed report to the Local Union, which may call in a certified public accountant, and all officers, business representatives and others in charge of the books of the Local Union shall submit them to such accountant for that purpose.

Art. 6, Sec. 1 of the Constitution of The International Union provides the General President shall have power to visit local unions in person or by deputy; to require information from them and their officers and members, and to inspect or investigate their affairs, and for such purposes shall have the right to demand and obtain possession of all books, records and other papers belonging to the local union. It further provides that if through such investigation or otherwise he (the president or deputy) has or receives information which leads him to believe that an officer of a local union was dishonest, negligent or incompetent, he could appoint a member in good standing with The International Union to preside over all regular and special meetings of said local union and to supervise its affairs, during which time the local union should pay no bills of any kind without first obtaining written approval therefor from such supervisor.

Continuing, the section provides that if a local union, or officer thereof, refuses to comply with the order of the General President and obstructs an investigator or supervisor, he (the General President) may take over the office of the local union, suspend its officers, and prefer written charges against it or them, in the meantime appointing a member in good standing of The International Union as trustee to take full charge and control of the affairs of the local union and carry them on, the suspended officer being bound in the meantime to turn over to the trustees all monies, books, papers and other property of the local union. But the section then provides that any local union officer or member thereof who is aggrieved by such action may appeal to the General Executive Council. So much for the facts. Others will be noted if necessary.

The relators' petition in the circuit court alleged they had "not attempted to secure from the Executive Board of the local Union the action which they desire concerning the institution and prosecution of this suit, because the members of such board are disqualified by their interest, are not vested with power to sue in the name of the association, and they would not prosecute this action in good faith if requested to do so." In so stating, relators apparently overlook the fact that since the three defendants were disqualified by their interest, the constitution of the Union would forbid them to sit on the Board in the case against them, and substitutes would have been appointed by the Vice President in their stead. It may be. relators meant to charge all six of the members of the Board were prejudiced, but if so it is a mere assertion without any specific charges against the other three members of the Board, and they are not joined as defendants.

Relators' first point briefed is that the respondent judge erred in holding his court had no jurisdiction of their class suit against the three defendants for a money judgment (and other relief) because *they* (relators) had not first exhausted their remedies within the Local

and International Unions. As we understand their brief, this contention is based on the theory that both Unions are unincorporated associations, and therefore cannot vest themselves with intra-union power to render a money judgment in favor of the Union. Neither, relators say, do the constitutions of the two Unions purport to vest any union tribunal with such power. But relators further contend that when a class suit for defalcations of officers, for instance, is brought by union members for themselves and other union members in *behalf* of the Union, the plaintiffs may sue directly at law without going through Union channels.

Relators' next point is that even where the effort is to make only a *preliminary investigation* of such defalcations [without attempting to obtain a money judgment] the provisions of the constitutions of the two Unions restricting such investigation to union procedure are not applicable. In fact relators assert the only provision in the constitution of either Union that might be thought to apply in such instances is one in that of the Local Union permitting ''any member who has good cause therefor (to) bring charges against any other member or officer of his local'' before the Executive Board as a Trial Board. But relators maintain this provision on a proper construction has no reference to money matters but only to *social* rights and relations of the members of the Union inter sese.

On that point they cite Local Lodge No. 104 v. International Brotherhood, 158 Wash. 480, 486(2), 291 Pac. 328, 330(4). That decision did hold such provisions apply *primarily* to controversies over ''internal discipline'', but it went further and held in the particular case [involving the embezzlement of a Government bond by an officer] that the procedure provided by the Union was inadequate because it was complicated, dilatory and expensive. And relators make that same contention here as a third point, citing two Missouri fraternal benefit insurance cases. State ex rel. B. L. of F., etc. v. Shain, 343 Mo. 666, 675-6 4), 123 SW. (2d) 1, 6((7); Roberson v. B. L. of F. & E., 233 Mo. App. 159, 170(10-12), 114 SW. (2d) 136, 140 (12, 13).

The brief of counsel for the respondent judge challenges the statement in relators' petition below that they have no remedy within the Local and International Unions, citing and quoting many of the foregoing provisions in the constitutions of the two unions. And it calls attention to the fact that all three defendants were required to give fidelity bonds; that the constitutions of one or the other or both unions provided for a thorough auditing of the books of the officers; and that the General President had the power of visitation and investigation, along with the right to assume control over the office of the Local Union, and to take such action as was necessary for the preservation of its property.

Also several decisions are cited which announce the general doctrine that a plaintiff or claimant must exhaust his remedies within a union before resorting to court procedure, especially where the constitution and by-laws of the union so provide and thus in effect make the requirement contractual as between the Union and its members. Hall v. Morrin (Mo. App.) 293 SW. 435, 440(9); Constantino v. Moreschi (Wash.) 115 Pac. (2d) 955, 961(4); Washington Local 104 v. International Brotherhood, etc. (Wash.) 203 Pac. (2d) 1019, 1045-7(1); Cosentino v. Goldman, 49 N. Y. S. (2d) 467, 470(2).

▮ We, of course, are not passing on the merits of the contentions of the adversary parties in the class suit below. The question here is whether the relators are entitled to a peremptory writ of mandamus requiring the respondent judge to set aside the order of his court dated August 15, 1945, dismissing their said class suit on the ground that his court had no *jurisdiction* thereof because relators had failed to exhaust their remedies within their Union before instituting the suit. Relators say mandamus was their proper remedy here and that they are entitled to a peremptory writ because all the facts on which the issue turns were admitted, thereby making the question purely one of law.

On that point they cite a number of Missouri decisions. Reference to two of these will suffice. In State ex rel. Foraker v. Hoffman, 309 Mo. 625, 635, 638(4), 274 SW. 362, 364-5(2), the circuit court had dismissed an action on the ground that it had no jurisdiction because the statute which expressly gave it jurisdiction was unconstitutional. This court ruled mandamus was the proper remedy to compel the trial court to accept jurisdiction because the facts were undisputed, presented only a question of law, and the statute was not unconstitutional. And State ex rel. Fielder v. Kirkwood, 345 Mo. 1089, 1093(3), 138 SW. (2d) 1009, held that "when, upon a preliminary question of jurisdiction depending wholly upon the law and not upon the facts, the court misconceives its jurisdiction of the cause or of the parties and refuses to proceed to a final determination upon the merits then the appellate court will issue its writ of mandamus to compel the lower court to reinstate the matter and proceed to its final determination without attempting to dictate what the result of such determination shall be."

But we are unable to agree with relators that the facts were undisputed in ▮ this case. It is true the provisions of the constitutions and by-laws of the two Unions, as introduced, were not disputed. But there was a serious dispute as to the factual effect of those provisions, and whether the remedies afforded thereby were adequate, or complicated, dilatory and expensive. The trial court found, as defendants contended, that the remedies within the Union were more adequate and complete than a suit for money in a court of law or equity would be. On the other hand the relators asserted

(and do in their brief here) that the remedies within the Union "would be futile", and that the pursuit thereof "would result in un- reasonable delay, expense and hardship." This submitted an issue of fact in the decision of which respondent had a judicial discretion which cannot be controlled by mandamus.

In a reply brief relators make the added point that they have *no* remedy at all within the Union. Their theory on this contention is that the remedies afforded by the Union at best only allow them to obtain an *audit* of the officers' books, but do not permit the Union to sue and obtain a *judgment* for any proven shortage. But the objective of the proceeding is to get back the *money* allegedly mis-appropriated. And we cannot assume as a matter of law that if the shortage were proven restitution would not be made without a law-suit. The defendant Livingston, as financial secretary-treasurer, and the defendant Irving, as business agent, were required to give surety bonds. And neither can it be assumed that litigation would not be attended by expense and delay. We think the respondent trial judge had a judicial discretion on these issues also.

On the other hand we think respondent erred in holding he had no *jurisdiction* of the cause. His was a circuit court of general jurisdiction. Without question that court had jurisdiction of the suit, and if his conclusion had been that the remedies within the Union were inadequate, he could and doubtless would have proceeded with the action as pleaded. His finding to the contrary—that Union reme-dies were adequate—merely called for a judgment or decree that relators could not *maintain* their suit. He was not required to dis-claim jurisdiction of it, nor could he. The situation was analogous to one where an action is premature, or barred by limitation.

Accordingly, our alternative writ of mandamus heretofore issued is modified and made mandatory only to the extent that respondent is ordered and directed to exercise jurisdiction in the cause and to rule thereon and render judgment in a manner and by proceedings not inconsistent with the views herein expressed. See: State ex rel. McClure v. Dinwiddie, 358 Mo. 15, 23(6), 213 SW. (2d) 127, 132(12). All concur.